UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN - GREEN BAY DIVISION

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 04-CR-40

WILLIAM N. MARTIN, JR.,

Defendant.

---

**DEFENDANT'S OBJECTIONS TO MAGISTRATE'S DECISION AND ORDER REGARDING SENTENCING ALLEGATIONS**

On October 20, 2004, the magistrate judge denied Martin's motion to strike sentencing allegations from the indictment. Pursuant to the magistrate judge's order, the defendant has 10 days from the date of the order to file an objection. What follows are Martin's timely objections.

In objecting to the magistrate judge's decision and order, the defendant relies upon the arguments presented in the defendants' initial briefs (Docket No. 79 and 109), which are attached here and, other than a few additional comments, Martin does not elaborate further on those arguments.

**I. Prejudicial Surplusage**.

With regard to the argument that sentencing allegations are prejudicial surplusage, the magistrate judge assumes that any prejudicial effects can be

mitigated by the district court's sentencing procedures. However, the magistrate judge cannot presuppose procedures not yet created by the district court. It will be up to this Court to decide how it wants to address jury fact-finding of sentencing allegations. Until this Court decides how it will address the requirements of *Blakely*,[1] the magistrate judge's decision is premature.

Moreover, it is not unreasonable to strike something now that might later be allowed. The sentencing allegations are prejudicial surplusage now. They should be stricken now. If the Supreme Court later finds that sentencing allegations are appropriate or even necessary, then the rules will have been changed by those with the power to change them, and we will all practice differently in every case. The Supreme Court regularly makes rulings that change the way law is practiced. However, they have not yet ruled on this issue. To say that this Court should not do something now simply because the law might change in the future is an argument without weight. We cannot predict the future, and thus we should not be anticipatorily bound if one possible outcome later comes to pass.

The result of the magistrate judge's decision is that the government is allowed to preemptively mitigate the effect of *Blakely* and *Booker* on the government's case while the defendants must wait for this Court to act, or for

[1] *Blakely v. Washington*, 124 S.Ct. 2531 (2004)

further clarity from the Supreme Court, before their challenge to the government's responses to *Blakely* and *Booker* will be entertained.

**II. Statutory Authority.**

Martin does not disagree with the government and the magistrate judge when they assert that sentencing allegations, if to be proved to a jury, must be first presented to a grand jury and contained in an indictment. Throughout this country's jurisprudence, it has been understood that "[t]he indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *Apprendi v. New Jersey*, 530 U.S. 466, 490, n. 15 (2000)(quoting *United States v. Reese*, 92 U.S. 214, 232-33 (1875)). Martin's argument, however, is that until procedures are put in place, via the Federal Rules of Criminal Procedure or statutory enactments by Congress, these constitutional requirements cannot be enabled. Nor can the federal common law[2] step in.

**III. The *Mistretta* Problem.**

The Supreme Court, in *Booker* and *Fanfan*, Nos. 04-104 and 04-105, will have to somehow reconcile *Mistretta v. United States*, 486 U.S. 361 (1989), with *Blakely*. *Mistretta* holds that the Sentencing Commission does not regulate the primary conduct of the public. *Mistretta* at 396. But *Blakely* and the *Apprendi* line of

---

[2] Martin acknowledges that the federal common law can be used to fill gaps in federal legislation that are needed to effectuate the federal statute. *See United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 591-93 (1973); *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 97-98 (1991). But, provisions that go to the core protections of the Fifth and Sixth Amendments are not mere gaps and cannot be cured by courts using federal common law.

cases clearly indicate that facts that increase a judge's sentencing authority, identified or created by the Sentencing Commission, are elements of the offense, or at least the functional equivalents thereof, and are therefore regulating the primary conduct of the public.

The *Apprendi* and *Blakely* decisions explain the historical treatment of factors that increase a defendant's punishment as elements. In *Apprendi*, the Court specified that the proper inquiry is not one of form, but of effect. *Apprendi*, 530 U.S. at 494. The Court goes on to state that although the term "sentencing enhancement" is not devoid of meaning, it fits squarely within the usual definition of "element." *Apprendi*, 530 U.S. at 494, FN19. The Court relied on Justice Thomas' concurring opinion as the basis for its discussion of the elemental nature of sentencing enhancements.

Justice Thomas, in his concurring opinion, sets forth the historical authority, which established that a "'crime' includes every fact that is by law a basis for imposing or increasing punishment." *Id.* at 501. The core crime, combined with an aggravating factor, constitutes an aggravated crime, just as grand larceny is an aggravated form of petit larceny. *Id*. Justice Thomas found support from both case law and an early treatise for his contention that sentencing factors are elements of aggravated crimes.





Case 1:04-cr-00040-WCG Filed 11/01/04 Page 4 of 7 Document 135

The treatise states that crimes consist of those acts to which the law affixes punishment and that elements of a crime are the wrongful aggregation out of which the punishment proceeds. *Id*. at 510 (citing 1 J. Bishop, NEW CRIMINAL PROCEDURE § 84, p.49 (4th Ed. 1895)).

Justice Thomas found similar definitions of "crimes" in cases such as *Lacy v. State*, 15 Wis. 13, 1862 WL 951 (1862), where the Wisconsin Supreme Court concluded that the Wisconsin arson statute, which assigned different punishment for arson depending on whether a person lawfully resided in the dwelling and, if so, whether a person was killed in the arson, created three distinct statutory offenses. *Apprendi*, 430 at 504-05. The level of punishment was central to the Wisconsin Supreme Court's determination that three separate offenses were created. *Id*. at 505.

Although the *Apprendi* majority does not adopt Justice Thomas' position that a new aggravated crime is created every time an additional fact is used to increase a defendant's punishment, the *Apprendi* Court does incorporate Justice Thomas' definition of "elements" as the wrongful aggregation out of which punishment proceeds. *See id*. at 494, FN19 (stating that sentencing factors that increase a sentence are the functional equivalent of a greater offense).

The *Apprendi* definition of "element" is adopted by the court in *Blakely*. In *Blakely*, the Court refers to Justice Thomas' concurring opinion in *Apprendi* as a proper restatement of the relevant authority on the type of factor to which the Sixth


Case 1:04-cr-00040-WCG Filed 11/01/04 Page 5 of 7 Document 135

Amendment's jury trial right affixes. The Court goes on to note that it agrees that the Constitution allows the States to reclassify elements as sentencing factors. *Blakely*, 124 S.Ct. at 2537, FN6. However, the Court is not willing to defer to the labels created by the States when determining whether the Sixth Amendment applies. *Id.*(taking issue with Justice O'Connor's dissent which would defer to the States the ability to determine what is an element and what is a sentencing factor).

The Court notes that if courts are to defer to legislative labels when determining whether something is an element or a sentencing factor, absurd results could follow. *Id*. at 2539. For example, a judge could sentence a man for murder even if the jury convicted him only of the illegal possession of a firearm. *Id*. Rather, the Court believes the proper inquiry should not revolve around the label that has been assigned to the factor by the legislature, but the effect of the application of that factor to the defendant. This is the same inquiry that the court endorsed in *Apprendi*.

The relevant discussions in *Blakely* and *Apprendi* demonstrate that a factor that increases a judge's sentencing authority is an element of the offense or the functional equivalent thereof.

If sentencing enhancements are elements, clearly *Mistretta* and *Blakely* are contradictory. Unless courts can find some way to reconcile the two positions, one of them must go. There has been a visible evolution of the *Apprendi* rule, making it apparent that the Supreme Court is more concerned with the Sixth

Amendment jury trial right and, therefore, *Mistretta* does not survive *Blakely*. Accordingly, the Sentencing Guidelines and the sentencing allegations promulgated thereunder must violate the separation of powers doctrine, contrary to the rule in *Mistretta*, and should be stricken from the indictment.

For the reasons stated above and for the reasons stated in the defendant's initial briefs, Martin respectfully objects to the magistrate judge's decision and order denying the defendants' motion to strike sentencing allegations from the indictment.

Dated at Milwaukee, Wisconsin, November 1, 2004.

Respectfully submitted,

**s/ Tom Phillip**
Tom Phillip, Bar #1023113
Brian Mullins, Bar #1026891
Attorneys for Defendant
Federal Defender Services of Wisconsin, Inc.
801 E. Walnut Street, Second Floor
Green Bay, Wisconsin 54301-4401
Tel: 920-430-9900
Fax: 920-430-9901
Tom_Phillip@fd.org
Brian_Mullins@fd.org

N:\Cases-Open\M-N\Martin, William\Pretrial\sent alleg objects.wpd