# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                  Case No. 04-CR-40

WILLIAM N. MARTIN, JR.,
and KURT D. SANDVIG,

        Defendants.

## ORDER

On September 23, 2004, the grand jury returned a fourth superceding indictment charging thirteen counts against William N. Martin, Jr., Kurt D. Sandvig, and two other defendants. Each count alleges an offense involving the sexual abuse and/or exploitation of minors. In addition to the thirteen counts, the indictment also set forth a number of sentencing allegations that, if proven, would result in an increased offense severity level under the United States Sentencing Guidelines.

Defendants Martin and Sandvig filed several pretrial motions. Martin filed 1) a motion to strike statements from the indictment; 2) a motion to strike sentencing allegations from the indictment; 3) a motion to suppress statements pursuant to Federal Rule of Criminal Procedure 5; and 4) a motion for a bill of particulars. Sandvig filed 1) a motion to strike sentencing allegations from the indictment; 2) a motion for severance; and 3) a motion to suppress statements made to law enforcement officials prior to his arraignment. On October 20, 2004, United States Magistrate Judge Aaron E. Goodstein issued his Order and Recommendation on the Defendants' Pretrial

Motions. Magistrate Judge Goodstein denied the defendants' motion to strike all sentencing allegations from the indictment. Regarding the additional statements that Martin had sought to have stricken, Magistrate Judge Goodstein noted that the fourth superceding indictment omitted such statements and therefore denied Martin's motion as moot. Magistrate Judge Goodstein also denied Sandvig's motion to sever and recommended that the defendants' motions to suppress their respective statements be denied. Finally, Magistrate Judge Goodstein granted Martin's motion for a Bill of Particulars and directed the Government to file a Bill of Particulars identifying which child (or children) is the alleged victim in counts one through seven of the indictment no later than November 1, 2004.

Sandvig filed no objections to the Magistrate Judge's Order and Recommendation. I nevertheless conclude for the reasons set forth below that his motion to strike the sentencing allegations from the indictment should be granted. Magistrate Judge Goodstein's order denying Sandvig's motion for severance will stand, however, and the recommendation that Sandvig's motion to suppress be denied is accepted. Pursuant to 28 U.S.C. § 636(b)(1), defendant Martin did file objections to the Magistrate Judge's Order and Recommendation, and his objections will be addressed herein.

Martin first objects to the Magistrate Judge's order denying his motion to strike sentencing allegations from the indictment. In denying the motion to strike sentencing allegations from the indictment, Magistrate Judge Goodstein was applying the law as it existed prior to the recent decision of the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005). Before *Booker* and in response to *Blakely v. Washington*, 124 S. Ct. 2531 (2004), most courts in this circuit had concluded that in order for the United States Sentencing Guidelines to be constitutionally

Case 1:04-cr-00040-WCG   Filed 02/22/05   Page 2 of 8   Document 167

applied, disputes over facts that resulted in an increase in the offense level under the Sentencing Guidelines were to be determined, like the question of guilt itself, by a unanimous jury applying the "beyond a reasonable doubt" standard of proof. *Booker* made this corrective unnecessary, however, by excising those provisions of the sentencing guidelines which made them mandatory. By transforming the formerly mandatory Sentencing Guidelines into advisory guidelines, the Court removed the constitutional impediment to having the sentencing judge resolve factual disputes concerning aggravating sentencing factors by a preponderance of the evidence. As a result, factual disputes concerning aggravated sentencing factors need not be submitted to the jury and thus constitute surplusage within the meaning of Fed. R. Crim. P. 7(d). Accordingly, the defendants' motion to strike the sentencing allegations in this case will be granted.

Martin also objects to Magistrate Judge Goodstein's recommendation that his motion to suppress his post-arrest statement to special agents of the FBI be denied. Martin's motion to suppress his statement is based on the *McNabb-Mallory* Rule. *See McNabb v. United States*, 318 U.S. 332 (1943) and *Mallory v. United States*, 354 U.S. 449 (1957). He argues that under this rule, his statement should be suppressed because the FBI's special agents who arrested him failed to take him before a magistrate judge "without unnecessary delay," as is required under Fed. R. Crim. P. 5(a)(1)(A). He also objects to Magistrate Judge Goodstein's ruling that an evidentiary hearing was not required to resolve the motion.

Martin was arrested on January 23, 2004, at approximately 8:30 a.m. by officers of the Beaver Dam Police Department pursuant to a warrant issued by United States Magistrate Judge James R. Sickel. He was transported to the Beaver Dam Police Department where, at approximately 9:03 a.m. he was interviewed by Special Agents James B. Doyle and Eric T. Brelsford. Martin was

3

advised of his *Miranda* rights, and voluntarily waived them and agreed to be interviewed. During the course of the interview, Martin was allowed to use the restroom whenever he requested, was allowed to smoke in the interview room, and was offered something to drink. At approximately 2:45 p.m. a meal from McDonalds was brought in for Martin, and the interview concluded at 3:10 p.m.

Snow had begun to fall heavily in Beaver Dam and across Eastern Wisconsin during the course of the day on January 23, 2004. By 3:00 p.m., approximately four to six inches of snow had fallen in the Beaver Dam area and was continuing to fall. The distance from Beaver Dam to Green Bay is approximately 90 miles. At the conclusion of the interview, FBI Special Agent Gerald Mullin contacted Jan Klika of the United States Attorney's Office for the Eastern District of Wisconsin to determine when Martin would be brought before the magistrate judge for his initial appearance. Klika contacted the office of Magistrate Judge Sickel and was advised that Martin would be seen on Monday morning for his initial appearance. The initial appearance was subsequently moved up to Saturday morning and on January 24, 2004, Martin was transported to Green Bay for his initial appearance.

The *McNabb-Mallory* Rule was based upon the Supreme Court's "supervisory authority over the administration of criminal justice in the federal courts." *McNabb*, 318 U.S. at 340. It is not constitutionally mandated. *Gallegos v. Nebraska*, 342 U.S. 55, 63-64 (1951) *See, generally,* 2 Wayne R. LaFave et al., Criminal Procedure § 6.3, at 468-74 (2d ed.1999). For this reason, Congress retained the authority to modify the rule or set it aside. *Dickerson v. United States*, 530 U.S. 428, 437 (2000) ("Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.").

4

In 1968, Congress exercised that authority in an apparent attempt to revise or repeal the *McNabb-Mallory* Rule, as well as the Court's more recent ruling in *Miranda v. Arizona*, 384 U.S. 436 (1966). As part of the Omnibus Crime Control and Safe Streets Act of 1968, Congress enacted 18 U.S.C. § 3501, which created a six-hour "safe harbor" for post-arrest statements. *United States v. Mansoori*, 304 F.3d 635, 660 (7th Cir. 2002). Under the "safe harbor" provision,

> In any criminal prosecution by the United States...a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer or law enforcement agency, shall not be inadmissible solely because of delay in bringing such a person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States...if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention....

18 U.S.C. § 3501(c). A voluntary confession that occurs within this six-hour "safe harbor" is therefore admissible notwithstanding a delay in bringing the defendant before a judicial officer. *Mansoori*, 304 F.3d at 660.

But even if a confession is obtained after six hours, suppression is not required. In *United States v. Gaines*, 555 F.2d 618 (7th Cir. 1977), the Seventh Circuit held that under 18 U.S.C. § 3501, a federal court retains discretion to employ an exclusionary remedy as a response to unreasonable delay beyond the six-hour period. In exercising that discretion, the *Gaines* Court instructed that trial courts should consider "a congeries of factors, including such elements as the deterrent purpose of the exclusionary rule, the importance of judicial integrity, and the likelihood that admission of the evidence would encourage violations of the Fourth Amendment. 555 F.2d at 423-24. More recently, the Seventh Circuit has made clear that it is the time between the arrest and confession that is considered in determining whether the safe harbor provision is met, not the total

5

amount of time resulting from the delay in bringing the defendant before a judicial officer. *United States v. Mansoori*, 304 F.3d 635, 660 (7th Cir. 2002) (confession within six hours of arrest admissible notwithstanding delay of over thirty hours before arraignment).

Here, there is no dispute that Martin's confession was voluntary and made after he was fully advised of his *Miranda* rights. Martin's interview began immediately after his arrest, well-within the safe harbor provision of § 3501, and appears to have continued slightly beyond the safe harbor only because Martin continued to provide information and was offered lunch. There is no evidence that the agents employed any of the coercive interrogation techniques that the *McNabb-Mallory* Rule was created to prevent. To the contrary, it appears the delay that did occur was the result of the agents' decision to offer Martin restroom breaks and lunch, and not to pressure or rush him into completing a statement. Under these circumstances, suppression is not necessary to vindicate any interest protected by the Fourth Amendment or judicial integrity in general. Accordingly, I adopt the recommendation of the Magistrate Judge that the motion to suppress be denied.

I also agree with Judge Goodstein's ruling that no evidentiary hearing was needed to determine the precise amount of snow that fell, when it fell, whether such a snowfall was forecast, and, in general, whether the decision to wait until the following day to transport Martin to Green Bay for an initial appearance was reasonable. Because Martin's uncoerced and voluntary statement was given in the course of an interview that immediately followed his arrest and only forty minutes of which may have exceeded the safe harbor created under 18 U.S.C. § 3510(c), the reasons that he was not taken before a judicial officer until the following day are not relevant. Martin's statement was obviously not the result of an unreasonable delay in taking him before a judicial officer for the simple reason that he waived his right to remain silent and began his statement before any delay had

Case 1:04-cr-00040-WCG   Filed 02/22/05   Page 6 of 8   Document 167

occurred.  Ultimately, Martin's argument for suppression assumes that any delay is unreasonable and that federal law enforcement officers may not question a person they have arrested until after he is brought before a judicial officer.  But neither the Constitution, nor any rule presently in existence, prohibits federal law enforcement officers from interviewing a suspect immediately after his arrest.  In the absence of such a rule, and given the undisputed facts concerning the statement, no evidentiary hearing was needed to decide Martin's motion to suppress.

Lastly, Martin objects to the magistrate judge's ruling on his motion for a Bill of Particulars. Martin had asked the court to require the government to issue a Bill of Particulars identifying a single person as the alleged victim in Counts 1-7 of the indictment.  By previous letter, the government had already identified several victims for each of those counts.  In granting Martin's motion, the Magistrate Judge directed the Government to provide Martin the information he requested by a formal Bill of Particulars.  However, the Magistrate Judge denied Martin's request that the government be ordered to identify a single victim for each count.

Martin contends that the Magistrate Judge erred because the statutes in question mandate a single victim for each count.  Martin's argument is based upon the language of the charging statutes.  18 U.S.C. §§ 2241(c), 2251(a), 2252(a)(2), and 2423(b).  He contends that because the statutory language uses the singular "person" or "minor," in referring to the object of the prohibited conduct, Congress must have intended that there be one victim for each violation.  Thus, he argues, the government must identify a single victim for each count.

Although Martin insists his argument follows from principles of statutory construction, he ignores one of the most basic of such principles, namely, "the singular includes the plural and the plural includes the singular, unless the context indicates otherwise."  1 U.S.C. § 1.  This principle

7

applies here. There is nothing in the language of the charging statutes that suggests a separate actual victim must be named for each count. In fact, as the government points out in its response, there need not even be an actual victim in order for a violation to occur. *See United States v. Root*, 296 F.3d 1222 (11th Cir. 2002) (conviction for inducing minor to engage in prostitution upheld where law enforcement agent posed as minor). And in *Bell v. United States*, 349 U.S. 81 (1955), the Court construed similar language in the Mann Act as requiring the government to include two victims in a single count where the defendant transported both women across state lines for immoral purposes at the same time in the same car and on the same trip.

For these reasons, I conclude that Magistrate Judge Goodstein's refusal to order the government to name only a single victim for each count of the indictment was correct. Although both parties understand that naming multiple victims may give rise to the issue of whether the charge is duplicitous, they agree that issue is premature and not currently before the court. Accordingly, it will not be addressed here.

**IT IS THEREFORE ORDERED** that the motion to strike sentencing allegations from the indictment is granted; Sanvig's motion for severance is denied; both defendants' motions to suppress their respective statements are denied; and defendant Martin's motion for a Bill of Particulars identifying a single victim for each count is also denied.

Dated this 18th day of February, 2005.


s/ William C. Griesbach
William C. Griesbach
United States District Judge

8