UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
                            Plaintiff,

        v.                                                              Case No. 04-CR-040

WILLIAM N. MARTIN et. al.,
                            Defendant.

## UNITED STATES OF AMERICA'S MOTIONS IN LIMINE

The plaintiff, the United States of America, by its Attorneys Steven M. Biskupic, the United States Attorney for the Eastern District of Wisconsin, and William J. Roach, Assistant United States Attorney for said district, presents the following motions *in limine*.

**1. Self Authentication of Business Records and Use of Summary Charts.**

That the Court, as provided in Fed. R. Evid. 104, make the preliminary determination that the foundational prerequisites for the admission of business records via Fed. R. Evid. 803(6) have been met. While the Court need not make a final determination of relevance and admissibility at this time, for the Court's convenience, the government provides the following brief description of the records and their relevancy and will then address the foundational prerequisites for admission via Rule 803(6):

        A. Sprint Cellular Telephone Records for (920) 318-9184 and (816) 210-5976.

The records establish that the former number is subscribed to by William Martin (Martin's telephone) and the later is subscribed to by Kurt Sandvig (Sandvig's telephone). The records indicate significant telephone calls between these two numbers as well as a telephone number associated with Joel Kline in the days leading up to the alleged travel by Sandvig to

Beaver Dam, Wisconsin in late February 2003. Specifically, the records confirm approximately 63 telephone calls occurring between 2/21/03 and 3/12/03 involving Sandvig's telephone and Martin or Kline's telephone. The government will establish at trial that some of these calls were made while Sandvig was en route to Beaver Dam. The records establish in part the defendant's travel in interstate commerce (or crossing a state line) and presence within the Eastern District of Wisconsin– an element of the offenses alleged in counts 5 and 6 of the indictment.

The records also confirm that Sandvig had telephonic contact with Kline before having contact with other telephone numbers from the Beaver Dam area. This corroborates the anticipated testimony of Joel Kline, that he initiated contact with Sandvig via email, provided Sandvig with his telephone number, and then received a telephone call from Sandvig. Finally, the records corroborate telephonic contact between Sandvig and Martin in late March and April 2003, after Sandvig is alleged to have left Beaver Dam.

### B. SBC Telephone Records for (816) 767-9190.

The records establish that this is the home telephone for Kurt Sandvig. The records offered show no telephonic contact between Sandvig and anyone from Beaver Dam until February 26, 2003– a day or so before Sandvig is alleged to have traveled from Kansas City to Beaver Dam. On that day, there was a sixteen minute telephone call between Sandvig and someone answering cellular telephone number (920) 318-9184–as noted above, the telephone subscribed to by Martin. The records also show telephonic contact in October and November 2003 between Sandvig's home telephone number and several telephone numbers from the Beaver Dam area including the cellular telephone subscribed to by Martin. It is anticipated the evidence will show that during this time period Joel Kline was residing with Kurt Sandvig.

C.  PayPal Records for William Martin and Adam Brown.

These records consist of subscriber or account information, transaction logs, and IP address log information.  In essence, the records detail the transfer of approximately $3970 in increments ranging from $50 to $600 from Brown to Martin.  It is anticipated, that Brown would testify that he sent these funds to Martin in November 2003 through January 2004 in exchange for sexually explicit pictures of the child victims in the company of Martin.  Chat logs, recovered from Martin's computer, corroborate some of these monetary transfers.

D.  Citibank records for account #045283168.

These records indicate the subscriber for that account number is Kurt D. Sandvig.  The records further confirm a series of Visa Check Card purchases and a monetary withdrawal all made in Beaver Dam, Wisconsin.  Specifically, the records indicate an ATM withdrawal from Beaver Dam, WI on 3/4/03, and a series of check card purchases from various businesses and eateries in Beaver Dam starting on 2/28/03 and ending on or about 3/7/03.  Notably within this group is an expenditure on 3/5/03 at the Americinn of Beaver Dam, a local motel, where multiple child victims have stated Kurt Sandvig sexually assaulted them.  The government intends on introducing handwriting analysis evidence, if necessary, to establish that Sandvig's known signature is consistent with the signature on Americinn room reservation records from that weekend.

E.  Commerce Bank records for account #5398-1082-0108-3524.

The subscriber for these records is Adam Brown, from Riverside California. They confirm a 9/7/02 purchase in the amount of $514 at Geoffrey's, a.k.a. Toys R Us. This purchase by Brown is believed to have primarily consisted of toys and electronic items later given to several of the child victims that Brown traveled to this jurisdiction to assault and photograph as alleged in Counts 3 and 4.

The records also detail a series of purchases from 10/25 through 10/27/02 including Shopko, Pizza Hut, Treasure Island and Avis Rent-A-Car from various cities in Wisconsin, including Beaver Dam. This coincides with the statements of several child victims that Brown had also traveled to Beaver Dam during this time period and engaged in sexual conduct with them.

### F. Treasure Island Hotel Records.

These records corroborate testimony from several child victims that they were sexually assaulted and photographed engaged in sexually explicit conduct while at this hotel. The records consist of an original registration card identifying Adam Brown, Riverside California as renting a room on 10/26/02 and leaving the next day. A vehicle described as a "Ford/F150 P/U, BLK" with no license plate was affiliated with the hotel room. The government anticipates establishing at trial that this vehicle was used by Martin to drive Brown and several child victims to that location. Further reservation details associated with that room rental indicate that two adults and four children were issued wristbands for entertainment privileges by the hotel.

4

Case 1:04-cr-00040-WCG   Filed 03/11/05   Page 4 of 18   Document 175

G. Rule 803(6).

As provided in Rule 803(6), the foundation for the admission of business records may be laid by any "qualified witness," and this phrase is given the broadest possible interpretation. *United States v. Keplinger*, 776 F.2d 678, 694 (7th cir. 1985). This witness "need only be someone with knowledge of the *procedures* governing the creation and maintenance of the type of records sought to be admitted." *Id.* at 693 (emphasis added). This foundation, therefore, can be laid by anyone who is familiar with a business's record-keeping system, including a government agent. *United States v. Franco*, 874 F.2d 1136, 1138 (7th Cir. 1989) (deeming narcotics agent, who searched company and spoke to owner and employee, and who had subsequently reviewed the records, qualified to establish that records and ledgers taken in search were admissible under Rule 803(6)); *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) (permitting FBI agent to lay foundation where agent familiar with the record-keeping system). Foundation may also be laid using circumstantial evidence such as the nature of the data generated. *Keplinger*, 776 F.2d at 694; *United States v. Pelullo*, 964 F.2d 193, 201 (3d Cir. 1992). *See also United States v. DeGudino*, 722 F.2d 1351, 1355 (7th Cir. 1984) (contents and location of records of criminal activity permissible to authenticate them as co-conspirator statements, even without identifying the author of the records).

The prerequisites for admissibility under Rule 803(6) must be established to the Court by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). The government has done such through the attached certifications obtained from the records custodians pursuant to Rule 902(11). Those certifications attest to the foundational requirements cited in these rules. And, through this motion in liminie, the government complies with the

5

requirement of advance notice to the defense and provides an opportunity for inspection of the exhibits.

        H. Summary Charts.

The aforementioned records in this case are voluminous. While, in the governments opinion, the records contain evidence that is highly relevant, there is also information clearly not pertinent to the case. Given this situation, the government will be offering summary charts detailing the evidence pertinent to the case.

The government offers these charts under Federal Rule of Evidence 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

To the extent any such chart is offered, it will be based on records made available to the defense in discovery, and the government will produce the documents if ordered to do so by the Court.

The admissibility of business records under Rule 803(6) and the procedure set forth in Rule 104, for determination of the preliminary questions regarding admissibility, are unaffected by the Supreme Court's decision in *Crawford v. Washington*, 124 S. Ct. 1354 (2004). In *Crawford*, the Supreme Court held that any "testimonial" hearsay may not be admitted in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. However, the Court made clear that business records admitted pursuant to an evidentiary hearsay exception are not the type of testimonial statements with which the Sixth Amendment Confrontation Clause is concerned. Id. at 1367.

6

## 2. Self Authentication of Trade Inscriptions.

That the Court, as provided in Fed. R. Evid. 104, make the preliminary determination that pursuant to Fed. R. Evid. 902(7), the government may introduce evidence in the form of trade inscriptions without offering extrinsic evidence of authenticity. Specifically, the government seeks admission of the following trade inscriptions:

> A. Made in Japan–located on Kodak DC-290, digital camera, found in possession of Adam Brown.
> B. Made in Japan–located on Nikon Coolpix E990 digital camera, found in William Martin residence.
> C. Made in Korea–located on Olympus D-400 digital camera, found in William Martin residence.
> D. Made in Japan–located on JVC Digital Camcorder, found in William Martin residence.
> E. Made in Malaysia–located on Western Digital harddrive, found in William Martin residence.
> F. Made in Singapore–located on Quantum harddrive, found in William Martin residence.
> G. Made in Singapore–located on Maxtor harddrive, found in William Martin residence.

The government asserts that these devices were used to produce child pornography as alleged in the indictment. One element of the charges alleged in counts 2, 4, 7-9, is that the visual depiction(s) was produced using materials that had been mailed, shipped or transported across state lines or in foreign commerce. In the case of count 13, the government must show that the item on which the child pornography was contained had been transported in interstate commerce.

Pursuant to Rule 902(7), labels for the business purposes of indicating ownership, control or origin are self-authenticating. This is so because of the widespread reliance on their accuracy and the low risk of their fabrication. 2 Michael H. Graham, *Handbook of Federal Evidence* §

902.7 at 747-48. Moreover, 19 U.S.C. § 1615(2) provides that labels indicating foreign origin are prima facie evidence of foreign origin of merchandise.

   3.   **Prior Conviction of Kurt Sandvig**.

That the Court, as provided in Fed. R. Evid. 104, make the preliminary determination that the government, pursuant to Rule 609, may impeach the defendant Kurt Sandvig, should he testify, with evidence of his prior convictions. Sandvig was convicted of two counts of "Forcible Sodomy" and judgements on the matters were entered on May 31, 1983. A more detailed accounting of the facts surrounding the sexual assaults of the minor boys by Sandvig is set forth in the governments Rule 413 and 414 motion.

   Rule 609(b) authorizes admission of convictions outside a ten year time limit if the court finds that in the interest of justice, the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

The government asserts that such convictions are probative and not unfairly prejudicial in light of the nature of the current allegations against Sandvig. In support of this position, the government adopts its arguments outlining the probative nature of the prior convictions in light of Rule 403 that it previously made in its Rule 414 and 413 motion.

   4.   **Admission of Confession by William Martin and Kurt Sandvig**.

That the Court, as provided in Fed. R. Evid. 104, make the preliminary determination that the government may offer testimony of statements made by both defendants Martin and Sandvig to law enforcement. On January 23, 2004, Martin provided a statement to FBI SA Eric Brelsford and SA James Doyle, that the government intends on introducing in its case in chief. Martin did not bring a motion contesting the admissibility of the statement.

8

On February 13, 2004, upon his arrest, Sandvig provided a statement to FBI SA Michael Daniels and TFO Brian Houlahan, upon his arrest. That same day via telephone, Sandvig also spoke with a Milwaukee, WI, FBI SA James Doyle. Sandvig brought a motion claiming Miranda and other violations. However, Sandvig later withdrew that motion prompting the Court to hold a hearing during which Sandvig again waived his right to challenge the admissibility of any statements made to law enforcement.

The government seeks admission of these statements in its case in chief and does not object to the standard jury instruction concerning the impact of purported confessions. *See* Seventh Circuit Pattern Criminal J.I. 3.02

**5.  Defense Expert Report.**

That the Court, as provided in Fed. R. Evid. 16(d), order the defense to provide to the government no less than two weeks before trial any written statements or reports of expert witnesses that it intends on calling at trial. Such an order will hopefully allow for an adequate amount of time to prepare for cross examination of the witness.

**6.  Inadmissibility of Child Victims Hospital Records.**

Approximately one month after the arrest of William Martin, and over a year after the defendants Adam Brown and Kurt Sandvig allegedly traveled to this jurisdiction, many of the child victims received a medical exam at a sexual assault treatment center. In the course of prosecuting the above-named defendants, the government received a release authorizing the receipt of ten child victims' medical treatment records and some time thereafter, the records themselves.

9

The government has no intention of admitting these records at trial for a number of reasons. First, the time that transpired between the travel of defendants Brown and Sandvig and even the one month time lag between Martin's arrest and the sexual assault exams conducted make any medical observations largely irrelevant. It has long been established that the majority of children who have been legally confirmed as victims of sexual abuse will have normal or nonspecific genital findings during later exams. Abnormal anal findings of child victims is very rarely ever found. *See*. Joyce Adams, *Examination Findings in Legally Confirmed Child Sexual Abuse: It's Normal to be Normal*, 94 Pediatrics, No.3 (September 1994).

In the cases against defendants Martin and Brown, the government will be offering evidence in the form of still pictures or movies with Martin and Brown as participants in sexual activity with most of these child victims. Although the government will still be calling most of these child victims, it nonetheless cannot reasonably be disputed that sexual activity occurred with these child victims.

Aside from evidence (or lack thereof) of physical injury, the reports also indicate that most of the child victims were not interviewed for details of the assault by the examining nurse or physician since law enforcement had already done so. Any statements provided are largely consistent with previous statements they had made and therefore barred by the Rules of Evidence, absent an allegation of recent fabrication or improper influence or motive (see Rule 801 (d)(1)).

### 7. Direct Evidence and Other Act Evidence.

The government seeks to admit at trial testimony concerning (a) the number of images of child pornography beyond those specifically referenced in the indictment; (b) other sexual

10

assaults committed by William Martin on child victims identified in images contained with count 13; (c) web chats between Martin and others; and (d) evidence of Martin's grooming child victims.

### A. Images of child pornography.

In total, approximately 1,865 sexually explicit images of child victims associated with the indicted defendants were found on Martin's computers. While the government does not intend on introducing all of these specific images, it does intend on introducing testimony as to their existence. Such evidence corroborates anticipated testimony from several child victims that Martin frequently took sexually explicit photographs of them. It also is demonstrative of Martin's knowledge that images of child pornography were on his hard drive–an element of count 13. It bears noting that many more images of "commercial child pornography" or images obtained from the internet were also located on Martin's computer.

### B. Sexual Assault of child victims depicted in Count 13.

The government intends on introducing through the testimony of Joel Kline that Martin sexually assaulted other child victims. In particular, Count 13 alleges that Martin possessed specific images of child pornography. The government intends on proving, in part through the testimony of Joel Kline, that Martin knew the specific child or children depicted in each of the images and that on one or more occasions he sexually assaulted that child and/or took the sexually explicit photograph. Such testimony is relevant to Martin's knowledge that images constituting child pornography were on his computer hard drive. Stated another way, the more images present, the more likely Martin was in knowing possession of child pornography.

11

C. Web chat conversations.

A post arrest search of Martin's computer resulted in the recovery of several Yahoo Messaging web chats between "bsomesmoke" and others in late December 2003 and January 2004. The government intends on establishing at trial that the screen name "bsomesmoke" was used by Martin. Several of the recovered web chats included "bsomesmoke" and screen names associated with Adam Brown and Joel Kline.

The content of the web chats includes admissions by Martin to producing child pornography, distributing child pornography, receiving child pornography and sexually assaulting numerous child victims in his company. The web chats also reference Martin's "web camming" with others and Martin's acceptance of money from Brown in exchange for Martin sending sexually explicit images to Brown. They also include detailed instructions from Martin to another on how to "find" a boy and groom him for sexual purposes. The chats also corroborate the distribution by the sender and Martin's receipt of sexually explicit images of minors as alleged in Counts 11 and 12.

D. Grooming sexual behavior by William Martin.

Grooming involves purposeful, calculated behavior that helps the offender perpetrate and continue the sexual abuse, and has been described as filling four basic functions. First, the offender cultivates the relationship with the child and sometimes the family, to disarm them and build trust and emotional dependency. Second, the relationship gives the offender an opportunity to study and test the child while overstepping boundaries. Third, once an offender has established himself as a friend and overcome the child's resistance to being touched, the offender advances the contact to include direct sexual touching. Finally, most offenders use

12

subtle forms of manipulation, coercion or persuasion, to maintain the child contact and to inject fear into the victim that other people will blame and reject them if they tell.  Jewell-Jensen, C., Bailey, P., and Jensen, S., *Selection, Engagement and Seduction of Children*, 25 Oregon MDT Quarterly 6,7, July 2000.

In the instant case, the government intends on introducing at trial, Martin's grooming behaviors including but not limited to: actions he took to meet potential child victims while in Beaver Dam; relationships he formed with parents or custodians of the child victims; providing adult pornography to child victims within his residence; distributing controlled substances to child victims; providing money and other things of value to child victims in exchange for sexual acts or the ability to take sexually explicit photographs of them; and threats whether direct or subtle to child victims not to report the sexual assaults or other illegal activities to an authority figure.

> E.  Inextricably intertwined evidence.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).  Under the doctrine of inextricably intertwined evidence, however, acts "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime," are not subject to a Rule 404(b) analysis.  *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002)(quoting  *United States v. Ramirez,* 45 F.3d 1096, 1102 (7th Cir.1995) (citing cases));  *United States v. Ward*, 211 F.3d 356, 361 (7th Cir. 2000).

Evidence is considered inextricably intertwined if it completes the story of the crime on trial, if its absence would create a chronological or conceptual void in the story, or if it helps to

13

explain the circumstances surrounding the crimes or tends to prove an element of the charged crimes. *Id*. (citations omitted). Evidence that is inextricably intertwined with the charged offenses is admissible as long as it is relevant and not unduly prejudicial under Rule 403. *Id*. (citing *United States v. Hargrove*, 929 F.2d 316, 320 (7th Cir. 1991)).

The government asserts that the vast majority-- if not all– of the above stated evidence falls within this category of being direct evidence or inextricably intertwined. The number of images beyond those the subject of the pending indictment are part of the circumstances surrounding the crimes alleged. Numerous child victims from the Beaver Dam area have stated that Martin was frequently taking sexually explicit pictures of them. The number of images found on his computer corroborates this anticipated testimony and will in part explain why child victims may not have a specific recollection as to whether an indicted image of them was taken by Martin or another.

Evidence of Martin's sexual assaults of the child victims depicted in Count 13 likewise falls within this definition of being inextricably intertwined. Often times, Martin was sexually assaulting a child victim while at nearly the same time was also taking sexually explicit photographs of that child.

The web chat conversations between Martin and others contain admissions by Martin to several of the charged offenses and hence constitute direct evidence that he committed the charged offense(s). Moreover, the web chats link Martin with his co-actors in the receiving of child pornography charges (counts 11 and 12) and detail the conversations between the involved parties both before and after the images were sent.

14

Finally, testimony surrounding the grooming behaviors used by Martin and others also serves to explain the circumstances surrounding the crimes, namely, how Martin and his co-actors came to be supervisory figures for numerous child victims, and how they were able to sexually assault and photograph these child victims without their immediate objection or report to authorities. As such, the evidence as it would relate to grooming practices by Martin and others is inextricably intertwined and not subject to a Rule 404(b) analysis.

F. Rule 404(b) evidence.

In the alternative, should the evidence not be inextricably intertwined, the evidence described above should be admitted pursuant to Rule 404(b) as it relates to either the intent, knowledge, or identity of Martin. Admission of Rule 404(b) evidence is proper if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Jones*, 248 F.3d 671, 674 (7th Cir. 2000).

For the same reasons as argued above, the government asserts that the aforementioned evidence is admissible for one or more of the allowable purposes noted within Rule 404(b). More specifically, all of the charged offenses have either a knowledge or purposeful element. Accordingly, facts demonstrative of the knowledge or purpose, such as the total number of child pornographic images on a hard drive, or web chats discussing the degree of arousal expected from child pornographic images received or distributed are admissible under these circumstances.

15

That evidence noted above not relating to Martin's knowledge or purpose still falls within Rule 404(b) as it establishes his identity or method of operation. For example, web chats between Martin and another, such as Adam Brown, wherein Martin indicates that he has just had sexual relations with one or more of the child victims and/or has just taken multiple sexually explicit digital photographs of the child victims and is forwarding them on, establishes Martin as individual producing, distributing and possessing those images. Or, in the alternative, the Martin's grooming conduct is part of a long standing method of operation he utilized to sexually assault child victims and keep them silent afterwards about their victimization.

Regarding the remaining factors part of a Rule 404(b) analysis, the government asserts that the sought to be admitted conduct is near enough in time and circumstances to the charged offenses to warrant inclusion under the rule. Furthermore, the conduct can be established by convincing evidence, either through admissions made by the defendant, his co-actors, or testimony by child victims. Lastly, admission of such evidence comports with Rule 403 by limiting the number of witnesses used to establish the stated facts and by inclusion of a limiting instruction detailing the reasons for admission of such evidence.

### 8. Child erotica and other photographs found in Sandvig's residence.

On February 13, 2004, FBI Special Agents assigned to the Kansas City, Missouri office, received consent from Kurt D. Sandvig to search his residence located at 10211 Oakley, Kansas City, Missouri. Sandvig is believed to be the only occupant of that premise. During that search, officers found, in the master bedroom closet, approximately 21 photographs each depicting between one and three naked, prepubescent males. In each photograph, the prepubescent males' genitals are prominently displayed.

Such photographs, if not qualifying as child pornography, clearly constitute child erotica. Child erotica has been described as "any material, relating to children, that serves a sexual purpose for a given individual." Kenneth V. Lanning, Child Molesters: A Behavioral Analysis, (1992).

As such, the photographs are admissible in the government's case in chief as demonstrative of Sandvig's knowledge, and purpose to cross a state line or travel so as to engage in a sexual act with a minor. Sandvig's possession of such photographs makes an innocent explanation for the reason of his travel less likely.

Additionally, special agents also found in excess of 200 photographs of juvenile boys stored on a digital camera. The pictures depict one or more boys posing for pictures or engaged in various activities including skate boarding.

The non child erotica pictures as well are probative of Sandvig's interest and fascination with juvenile boys. Again, his knowing possession of these photographs make an innocent explanation for his travel less likely.

Respectfully submitted this 11th day of March, 2005, at Green Bay, Wisconsin.

Steven M. Biskupic
United States Attorney

By: s/ William J. Roach

William J. Roach
Assistant United States Attorney
William J. Roach Bar Number: 1018756
Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
205 Doty Street, Suite 302

17

Green Bay, Wisconsin 54301
Telephone: (414) 788-9921
Fax: (920) 884-2997)
E-Mail: william.j.roach@usdoj.gov

18