UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                               Case No. 04-CR-40

KURT D. SANDVIG,

      Defendant.
_____

DEFENDANT SANDVIG'S RESPONSE TO
GOVERNMENT'S MOTIONS IN LIMINE

_____

Pursuant to the Court's Order, Kurt Sandvig offers the following responses to the Government's Motions in Limine.

Sandvig's counsel would make a more complete response given more time and a greater familiarity with the case than he has been able to acquire to date.

**1. Self-Authentication of Business Records and Use of Summary Charts.**

The Government's description of the records in this section includes records that do not apply to, nor do they even mention, Kurt Sandvig. Those include the PayPal records for William Martin and Adam Brown (Government's Motion at p. 3, subsection C), the Commerce Bank records for Adam Brown (Government's Motion at p. 3, subsection E), Treasure Island Hotel Records (Government's Motion at p. 4, subsection F).

**Waring R. Fincke**

Mr. Sandvig requests a ruling that these records are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

Of the records that the Government claims are applicable to Mr. Sandvig, its submission goes beyond mere self-authenticating business records when the attempt is made to bootstrap in handwriting analysis. (Government's Motion at p. 3, subsection D) Sandvig has not been provided with anything more than the bald assertion that a handwriting analysis has taken place and that certain signatures on some documents were made by him. He has not been provided with any of the analyst's qualifications nor of any detailed report on the methods used to conduct the analysis. Mr. Sandvig believes this evidence should be excluded for the Government's failure to provide sufficient notice and information on the formation of the expert's opinion to enable the defense to meet this evidence at trial.

The Government's sets forth an accurate recitation of F.R. Ev. 803 (6), 902 (11) and (12). As will be seen below, mere citation to these Rules does not carry the day.

The next section of the Government's motion discusses the use of Summary Charts under F.R. Ev. 1006. It is difficult to discuss the Government's proposal because Mr. Sandvig's counsel has not been presented with the Summary Charts the Government intends to use. Mr. Sandvig would like to reserve the right to lodge further objections to the Charts once they have been made available and have been reviewed.

Because it is anticipated that the Government's Summary Charts will only contain what it believes will harm Mr. Sandvig, he asks the Court to order the Government to bring the actual records from which the Charts are derived so that the missing items that will assist Mr. Sandvig's defense can

be provided to the jury and the omission of that material from the Government's Charts highlighted.

The Federal Rules of Evidence and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), are part of the Government's business records discussion. (Government's Motion at p. 6, subsection H). The Government's analysis of Crawford is flawed. That decision of the U.S. Supreme Court squarely holds that "testimonial" evidence from an out of court declarant is not admissible unless the witness is unavailable and there was a prior opportunity to cross-examine that witness. Id. at. 30-32. There is language in the majority opinion that there might be exceptions to the general rule of exclusion, such as business records, but it was quick to point out that this exception had little place in criminal prosecutions. Id. at 32. Footnote 7 of the opinion on this point tells the tale.

> We cannot agree with the Chief Justice that the fact '[t]hat a statement might be testimonial does nothing to undermine the wisdom of one of these hearsay exceptions.' (citation omitted) Involvement of government officers in the production of testimony with an eye towards trial presents unique potential for prosecutorial abuse--a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if the exception might be justifiable in other circumstances.

The correct analysis leads to the inescapable conclusion that while a business record of say a telephone call or a bank deposit may not be "testimonial" under Crawford, the certification submitted under Rule 902 (11) or (12) is certainly "testimonial." That the custodian's certification merely lays the foundation for the admissibility of the record does not make

the certification any less "testimonial." Crawford rang the death nell for Rule 902 (11) and (12) in criminal cases. The business records' custodian must appear to lay the foundation for admission of business records under Rule 803 (6), then the Court must determine if the content of the business record is "testimonial" under Crawford and order exclusion if it is.

### 2. Self-Authentication of Trade Inscriptions.

The Government's proffer in this section of its Motion does not apply to any evidence related to Kurt Sandvig or the charges he faces in this case. Mr. Sandvig requests a ruling that these items are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

### 3. Prior Conviction of Kurt Sandvig.

As noted in the Government's Motion (p. 8), this request is inextricably intertwined with the issues raised by the Government's previously filed motion to admit evidence under Rules 413-14. It is also part and parcel of the Motion previously filed by Mr. Sandvig to exclude his prior conviction, should he testify, under Rule 609 (b). Mr. Sandvig's previously asserted arguments on this issue are incorporated herein by reference.

### 4. Admission of Confession by William Martin and Kurt Sandvig.

Mr. Sandvig believes that any statement the Government might introduce made by Mr. Martin contains no information about or statements from Kurt Sandvig. If that assertion is correct, then Mr. Sandvig requests a ruling that Martin's statement is not relevant to Mr. Sandvig and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

With respect to Mr. Sandvig's alleged statement, two issues arise. The first concerns a portion of that statement in which Mr. Sandvig refused to

**Waring R. Fincke**　　　　　　　　　4

Case 1:04-cr-00040-WCG   Filed 03/17/05   Page 4 of 11   Document 187

answer certain questions put to him in this custodial interrogation. Sandvig's counsel has alerted Government counsel to this issue and seeks a stipulation that no reference will be made about any such refusals. If no such stipulation is forthcoming, then an appropriate Motion to Suppress that portion of Mr. Sandvig's statement will be filed with the Court.

The second issue relates to the notes taken by the FBI agents during their interrogation of Mr. Sandvig. Mr. Sandvig disputes much of what is contained in the agents' reports concerning what he said. It is apparent that, in accordance with longstanding FBI policy, the interview with Mr. Sandvig was not videotaped or recorded in any fashion other than in the agents' contemporaneous notes. Mr. Sandvig's counsel has requested access to those notes from the Government. Mr. Roach has not yet advised if he will voluntarily turn over those notes. If he does not, a motion for their production will be filed with the Court. That motion will also address the production of the other interview notes currently on inventory with the FBI.

If the statement is allowed, then the jury instruction requested by the Government is appropriate and it should be given at the time the statement is introduced.

**5. Defense Expert Report.**

As much as Mr. Sandvig would like to comply with the Government's request for disclosure of his experts' reports two weeks before trial, he cannot.

Mr. Sandvig's current lead counsel is still catching up in his preparation of the case for trial. The Court approved counsel's CJA request for the services of an expert to review the videotaped interviews of the child complainants just this week and modified the discovery Protective Order so that the necessary items can be shared with the expert today. It is doubtful that the expert's review of the tapes will be completed and his conclusions

reached much before April 4th. As soon as there is something to share and a decision is made to utilize this expert at trial, the Government will be provided with what Rule 16 requires.

The Court has also been requested to approve the services of a computer forensic specialist to analyze the computers seized from Mr. Sandvig's residence and provided to the Government by his former employer. The Government has yet to inform Mr. Sandvig's counsel if this defense expert will be allowed to make copies of these computer hard drives for his analysis. The Protective Order will need to be modified for this work as well. It is doubtful that this expert will be able to complete his analysis of the hard drives and prepare a report much before April 4th. As soon as there is something to share and a decision is made to utilize this expert at trial, the Government will be provided with what Rule 16 requires.

Mr. Sandvig's counsel continues his dialog with Dr. Fred Berlin about testifying for Mr. Sandvig concerning their sex offender treatment together. Once decisions are made with respect to this evidence, if there are reports to be shared with the Government, the Government will be provided with what Rule 16 requires.

An adjournment of the trial, as previously requested, will make this process more orderly and deliberate.

**6. Inadmissibility of Child Victims Hospital Records.**

Mr. Sandvig objects to the Government referring to the juvenile complainants in this case as "victims." As far as Mr. Sandvig is concerned in this trial, anyone's status as "victim" will not be established until there is a finding of guilt as to his alleged behavior with any juvenile beyond a reasonable doubt.

To the extent some, or all, of the complainant's allege multiple instances of anal penetration by Mr. Sandvig, the absence of any injury to

those portions of the juveniles' anatomy, is both relevant and exculpatory. The Government can try to explain it away by expert testimony, if it chooses, but no such experts have been identified nor reports of their expected testimony provided. Mr. Sandvig intends upon cross-examining the complainants who testify to anal penetration and their parents about the absence of injury and if injury is claimed, then the defense will seek introduction of the hospital records to impeach the claims of injury.

With respect to the Government's claims regarding the pictures of Brown and Martin engaged in sexual activity with the juvenile complainants, all such evidence is not relevant to Mr. Sandvig. Mr. Sandvig requests a ruling that these items are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

### 7. Direct Evidence and Other Act Evidence.

None of the items or acts listed in this section of the Government's Motion (p. 11-13, subsections A, B, C and D) involves, mentions, is related or relevant to Mr. Sandvig. Mr. Sandvig requests a ruling that these acts and items are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

Next, the Government's Motion discusses "Inextricably intertwined evidence." (p. 13-14, subsection E). The acts and items listed by the Government appear to apply only to Mr. Martin and not to Mr. Sandvig. None of this evidence is relevant to the charges against Mr. Sandvig. Mr. Sandvig requests a ruling that these acts and items are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

The only possible reference in the Government's Motion that might sweep Mr. Sandvig into the analysis is the discussion of "grooming behaviors used by Martin *and others*..." (emphasis added) (Government's Motion at p. 15.) This reference to unidentified "other" co-actors is not sufficient to put Mr. Sandvig on notice of any acts attributable to him against which he will have to defend.

Given Mr. Sandvig's limited time in Beaver Dam, four days at best, the Government should not be allowed to paint Mr. Sandvig with the same "grooming" and "supervisory figure" brush it applies to Mr. Martin. This does not pass a Rule 403 analysis in that is unduly prejudicial to Mr. Sandvig, it is not relevant to him and his charges and fails to satisfy any legitimate purpose for admission as to Mr. Sandvig.

This proffered evidence fails to pass the Rule 404 (b) test as to Mr. Sandvig either. The bulk of the illegal activity in this case relates to the activities of Mr. Martin. All of the other charged co-defendants have pled or will plead guilty and are no longer on trial with Mr. Martin and Mr. Sandvig. While there may be a need to explain Mr. Martin's lengthy sexual activity with the juvenile complainants to convict Martin, the same is not true for Mr. Sandvig. As counsel for the Government pointed out at an earlier hearing where the undersigned sought an adjournment to have adequate time to prepare for what appeared to be a large and complicated case, it is the Government's position that the case against Mr. Sandvig is a relatively straightforward case involving a few complainants in a short period of time. The Government further claimed Sandvig's case was made easy because there would be no photographic or other inculpatory documentary evidence introduced against Mr. Sandvig. If that is the case, then all of Mr. Martin's transgressions cannot be applied to Mr. Sandvig. The Government cannot have it both ways.

The Government's Rule 404 (b) analysis (Government's Motion at p. 15-16, subsection F) only mentions Mr. Martin. This is a clear concession by the Government that this analysis cannot be used to admit the proffered evidence against Mr. Sandvig. Mr. Sandvig requests a ruling that these acts and items are not relevant to him and an instruction to the Jury that it is to disregard all such evidence in its consideration of the charges against Mr. Sandvig.

The overwhelming weight of the evidence that will be admitted against Mr. Martin, but will also be inadmissible yet highly prejudicial as to Mr. Sandvig calls for the renewed request here for separate trials for these two Defendants so that Mr. Sandvig can have a fair trial where he just has to face the evidence against him and not any of the other illegal conduct by Mr. Martin.

**8. Child erotica and other photographs found in Sandvig's residence.**

It is difficult to argue with the Government's assertions about the 21 photographs allegedly found by the FBI in Mr. Sandvig's closet. The undersigned has requested the opportunity to view these pictures and the other physical evidence on inventory at the FBI office in Milwaukee. So far, counsel for the Government has not yet set up a date or time for that review to take place. Leave of the Court is requested to file objections to this portion of the Government's Motion until after that review has taken place.

The Government asserts that the photos of naked boys were found in Mr. Sandvig's residence almost a year after he is alleged to have traveled to Beaver Dam and sexually assaulted boys there. It does not assert that the photos were possessed before Mr. Sandvig traveled across state lines to have sex with minors. The Government does not assert that any of the boys

depicted in the photographs are the same ones who claim to have been assaulted by Mr. Sandvig.

Mr. Sandvig does not agree that the photos described in the Government's Motion (p. 16-17) constitute "child erotica" or "child pornography." If the Government's definition of "child erotica" is utilized, the foundational requirements for the application of the definition to Mr. Sandvig have not been proffered, much less established in the Government's submission. There has been no showing that possessing the photos served a "sexual purpose for a given individual," i.e. Kurt Sandvig. There has been no showing that Mr. Sandvig knew these photographs were present in his home, much less that they somehow establish a "purpose to cross a state line or travel so as to engage in a sexual act with a minor." (Government's Motion at p. 17) It is difficult to conceive how possession of photographs of a naked children a year after the fact, by itself, says anything about previous travel across a state line a year earlier to have sex with a minor. If the Government's logic is to hold true, then the mere possession of such photos makes one's every move forever, local or interstate, for the purpose of having sex with a minor.

Mr. Sandvig has been provided with copies of the digital photos taken from a camera. None of these photos depict anything even remotely sexual. Some are landscapes from a desert environment. Some show juvenile boys engaged in sporting events such as baseball and skateboarding. Some show juvenile boys in various rooms in a house. The Government has identified none of these boys. Merely having pictures of young boys is not indicative of an "interest and fascination with juvenile boys." They are just pictures. They do not relate at all to a nefarious purpose for travel.

The photos do not pass any proffered evidentiary test for admission. It is up to the proponent of the evidence to demonstrate qualification for

admission. The Government has failed to make any such showing. None of these photos are relevant to the issues presented in this trial and should be excluded. If relevant, the photos do not meet the standards set forth in Rules 403 and 404 for admission.

Dated at West Bend, Wisconsin, this 17th day of March, 2005.

Respectfully Submitted,

/s/ Waring R. Fincke

_____
Waring R. Fincke
Attorney for Kurt D. Sandvig
State Bar No. 01013875

**Waring R. Fincke**
Attorney at Law
1784 Barton Ave. Suite 17
West Bend, Wisconsin 53090
(262) 334-1030 (voice)
(262) 334-1035 (fax)

email - wrfincke@execpc.com
website - http://www.execpc.com/~wrfincke

**Waring R. Fincke** 11
Case 1:04-cr-00040-WCG   Filed 03/17/05   Page 11 of 11   Document 187