'05 MAY 13 ⁓0:45

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 04-CR-040

WILLIAM N. MARTIN JR.,

Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and William J. Roach and Brian E. Pawlak, Assistant United States Attorneys for said district, and the defendant, William N. Martin Jr., individually and by Attorneys Tom Phillip and Dean Strang, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in Counts 1 through 13 of a Fourth Superseding Indictment, which alleges violations of Title 18, United States Code, Sections 2241(c), 2251(a), 2252(a)(2), 2252(a)(4), 2423(b) and 2.

3.     The defendant has read and fully understands the charges contained in the Fourth Superseding Indictment and fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     The defendant voluntarily agrees to plead guilty to Counts Two, Four and Thirteen, set forth in full as follows:

## COUNT TWO

### THE GRAND JURY FURTHER CHARGES THAT:

On or about October 25, 2002, in the State and Eastern District of Wisconsin, and elsewhere,

### ADAM J. BROWN,
### WILLIAM N. MARTIN, JR., and
### JOEL W. KLINE,

the defendants herein, employed, used, persuaded, induced, and enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce.

All in violation of Title 18, United States Code, Sections 2251(a) and 2.

## COUNT FOUR

### THE GRAND JURY FURTHER CHARGES THAT:

On or about September 6, 2002, in the State and Eastern District of Wisconsin, and elsewhere,

### ADAM J. BROWN and
### WILLIAM N. MARTIN, JR.,

the defendant herein, employed, used, persuaded, induced, and enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce.

All in violation of Title 18, United States Code, Sections 2251(a) and 2.

2

## COUNT THIRTEEN

### THE GRAND JURY FURTHER CHARGES THAT:

On or about January 23, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### WILLIAM N. MARTIN, JR.,

the defendant, knowingly possessed one or more books, magazines, periodicals, films, video tapes, and other matter which contained any visual depiction that had been mailed, and had been shipped and transported in interstate and foreign commerce, an which was produced using materials which had been mailed and so shipped and transported, by any means including by computer, the producing of such visual depiction having involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct; that is: William N. Martin Jr,. knowingly possessed a computer which contained numerous images of minors engaged in sexually explicit conduct as defined in Title 18 U.S.C. Section 2256(2) identified by the file names "excited.jpg"; "P5250041.jpg"; "P5250044.jpg"; "snag_0003.avi"; "P5250029.jpg"; "Noname204.mpg"; "Noname206.mpg"; "Noname208.mpg"; "Noname209.mpg"; "Noname13.mpg"; "bound and raped.mpeg"; "BBondage307.jpg"; "BBondage313.jpg"; "Noname16.mpg"; "P1010034.jpg"; "P0000701.jpg"; "P1010016"; "P1010029"; "Noname 04.mpg"; "Noname 05.mpg"; "Bbondage08.mpg"; "Bbondage08a.mpg"; "Noname205.mpg"; "Noname207.mpg"; "P0001011.jpg"; and "P0001012.jpg". The computer hard drive that produced these visual depictions had been mailed or shipped in interstate commerce.

All in violation of Title 18, United States Code, Section 2252(a)(4)(B).

3

5.     The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph four. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts, and these facts establish his guilt beyond a reasonable doubt:

On December 3, 2003, State of Michigan search warrants were executed at the home and place of employment of Brian Urbanawiz. Urbanawiz was located and placed under arrest. Following a signed written waiver of his Miranda rights, Urbanawiz confessed to possessing numerous images of child pornography. Urbanawiz also advised investigators that approximately 300 people on his "buddy list" were active pedophiles like himself.

Urbanawiz identified one of those individuals as William Martin, who resided in Beaver Dam, in the State and Eastern District of Wisconsin. Urbanawiz stated that Martin operated a flophouse for boys. Urbanawiz stated he has viewed a live web cam video broadcast from Martin to Urbanawiz depicting two boys, John Doe 1 (D.O.B. 9/1/94) and John Doe 2 (D.O.B. 7/6/93), engaging in sex, with Martin sometimes joining in with the boys. Urbanawiz has also witnessed Martin perform oral and anal sex on John Doe 1 via a web cam video broadcast. Urbanawiz knows the ages and names of the boys because Martin reported the ages and names to Urbanawiz during internet chat sessions between the two men.

Based on the above information, William N. Martin was arrested in Beaver Dam, Wisconsin, on January 23, 2004, and charged with sexual exploitation of children in violation

4

of 18 U.S.C. § 2251. A search warrant was executed that same day at Martin's residence in Beaver Dam, Wisconsin. Federal Bureau of Investigation Agents (Agents) recovered several digital cameras, a camcorder, and computer equipment including several computer hard drives and CDs. All of the computer equipment and storage media as well as cameras and camcorders consist of materials that had previously been mailed, shipped or transported in interstate commerce. Further, the Agents continued investigation showed that most if not all the computer equipment was used by Martin, his business associate, Joel Kline, and others to produce visual depictions of minors engaged in sexually explicit conduct.

Initially, Agents discovered that the majority of files found on Martin's hard drives and on the CDs were encrypted. After receiving the encryption code from Joel Kline, Agents recovered and viewed those encrypted files. Agents identified thousands of images -- in the forms of movies and photographs -- depicting children, many from the Beaver Dam area, and some of whom were under the age of twelve, engaged in sexual activity as that phrase is defined under 18 U.S.C. § 2246(2). In many of those recovered images, Agents identified Martin, Adam Brown, Joel Kline, and Timothy Dirk engaged in sexual activity with the child victims. For example, a movie file depicting the defendant engaging in anal intercourse with John Doe 3 was found on Martin's computer.

Some of the above-referenced photographs were determined to have been taken in Beaver Dam on or about September 6, 2002, and October 25, 2002, after Adam Brown traveled from California to Wisconsin for the purpose of having sexual contact with minors, all of which was arranged by the defendant, William Martin. On both of these dates, Martin

5

and Brown took several minor children to a Beaver Dam hotel where they engaged in sexual contact with the children and photographed the conduct. The children involved in these incidents ranged in age from 8 to 12 years old. Specifically, images from the October 25, 2002 incident were found on Martin's hard drive. Images from the September 6, 2002 incident were found on a DVD at Adam Brown's California residence, images which were determined to have been taken by Martin using Brown's Kodak camera.

Agents and Dodge County child advocates interviewed at least ten minor children, some of whom were under the age of 12, including those involved in the September 6, 2002 and the October 25, 2002 incidents. All of them identified Martin as having repeatedly sexually abused either them or other children. They also identified Adam Brown, Kurt Sandvig, Joel Kline, and Tim Dirk as having sexually abused them or other children. The children indicated that oftentimes Martin filmed or photographed the sexual contact.

For example, John Doe 2 stated that Martin sexually assaulted him and other children on repeated occasions. Additionally, one of Martin's friends identified as "Adam" from California traveled to Beaver Dam, Wisconsin, in the fall of 2002. John Doe 2 stated that Adam, later identified as Adam J. Brown, flew into an airport in Wisconsin (crossed a state line) and that Martin picked up Brown at the airport and drove Brown, John Doe 2 and other children to the AmericInn hotel in Beaver Dam, Wisconsin. While at the hotel, Brown touched John Doe 2's penis and that of several other children. John Doe 2 stated that Brown had oral sex and anal sex with two of the children as well. John Doe 2 stated that Martin was taking digital photographs of these acts, some of which were later recovered on Martin's

6

computer.

Agents also spoke with Joel Kline, who identified himself as Martin's downstairs neighbor and business partner. Kline admitted committing sexual acts with several of the child victims, oftentimes while the children were in the care and custody of Martin. Some of these acts were filmed or photographed by Martin. Kline stated he also knew Adam Brown and had met him through the internet. Kline stated he and Martin would "scam" money from Brown by charging him large amounts of money for pictures of the child victims. Kline knew that Martin would then send sexually explicit pictures or web cam images of the child victims in return for the money. Kline also knows that Brown has been to Beaver Dam to visit Martin and the boys for the purpose of engaging in sexually explicit conduct. Shortly before the trip, Kline stated that he and Martin talked about charging Brown to have sexual contact with the child victims. Kline stated he saw Brown in Beaver Dam and knew Brown, Martin and child victims went to a hotel.

The images identified and alleged in Count 13, to which the defendant is pleading guilty, were found during the search of the defendant's residence on January 23, 2004, on a hard drive and on CDs. The images included photographs and movie files of in excess of 10 different identified child victims, including at least one as young as 7, engaged in sexually explicit conduct.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

7

## **PENALTIES**

6.     The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following penalties:

Count Two:  a mandatory minimum of ten years imprisonment, a maximum of 20 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

Count Four:  a mandatory minimum of ten years imprisonment, a maximum of 20 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment; and

Count Thirteen:  10 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

7.     The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes, as well as the applicable sentencing guidelines, with his attorneys.

8

## ELEMENTS

8.     The parties understand and agree that in order to sustain the charges alleged in Counts Two and Four, Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a), the government must prove each of the propositions beyond a reasonable doubt:

First, at the time, the victim was under the age of 18 years;
Second, the defendant employed, used, persuaded, induced, enticed or coerced the victim to take part in sexually explicit conduct for the purpose of producing any visual depiction of such conduct; and
Third, the visual depiction was produced using materials that had been mailed, shipped or transported across state lines or in foreign commerce.

The parties further understand and agree that in order to sustain the charge contained in Count Thirteen, Possession of Child Pornography Shipped in Interstate Commerce, in violation of Title 18, United States Code, Section 2252(a)(4), the government must prove each of the following propositions beyond a reasonable doubt:

First, that the defendant possessed a hard drive or other digital media containing child pornography;
Second, that the defendant knew there were images of child pornography on his hard drive or other digital media; and
Third, that the item on which the child pornography was contained had been transported in interstate commerce.

## DISMISSAL OF REMAINING COUNTS

9.     The government agrees to move to dismiss the remaining counts of the fourth superseding indictment, and all remaining pending indictments, as to defendant Martin, at the time of sentencing.

9

## SENTENCING PROVISIONS

10.    The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.    The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.    The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13.    The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

### Sentencing Guidelines Calculations

10

14.     The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement. The parties agree that based upon the dates of the violations to which the defendant is pleading guilty, the Sentencing Guidelines book effective November 1, 2002 is applicable in this case, pursuant to U.S.S.G. § 1B1.11.

### Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

### Base Offense Level

16.     The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count two is 27 under Sentencing Guidelines Manual § 2G2.1(a); and the applicable base offense level for the offense charged in count four is 27 under Sentencing Guidelines Manual § 2G2.1(a); and the applicable base offense level for

11

the offense charged in count thirteen is 27 under Sentencing Guidelines Manual §§ 2G2.4(c)(1) and 2G2.1(a).

## Specific Offense Characteristics

17.    The parties agree to recommend to the sentencing court the following specific offense characteristics for each of the counts to which the defendant is pleading guilty: a four-level increase under § 2G2.1(b)(1)(A) because the offenses all involved victims who had not attained the age of twelve years; and a two-level increase under § 2G2.1(b)(2) because the offenses all involved minors who were in the custody, care or supervisory control of the defendant.

18.    The parties agree to recommend to the sentencing court that § 2G2.1(c)(1) is applicable because the offenses to which the defendant is pleading guilty all involved the exploitation of more than one minor.

## Vulnerable Victim

19.    The parties agree to recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 3A1.1(b)(1) is applicable to the offense level for each of the offenses to which the defendant is pleading guilty, and that an additional two-level increase under Sentencing Guidelines Manual § 3A1.1(b)(2) is applicable to the offenses because the defendant's offenses involved a large number of vulnerable victims.

## Physical Restraint

20.    The defendant acknowledges that the government will recommend to the sentencing court that a two-level increase under Sentencing Guidelines Manual § 3A1.3 is

12

applicable because the offenses involved physical restraint of the child victims. The defendant will not join in this recommendation.

## Role in the Offense

21.     Pursuant to Sentencing Guidelines Manual § 3B1.1(c), the parties agree to recommend a two-level increase be given for an aggravating role in the offense, as the defendant was an organizer, leader, manager, or supervisor of this criminal activity.

## Grouping

22.     The parties agree that a five-level increase is applicable under Sentencing Guidelines Manual § 3D1.4.

## Acceptance of Responsibility

23.     The parties agrees to recommend a three-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1, but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing.

13

## Repeat and Dangerous Sex Offender Against Minors

24.     The parties agree to recommend to the sentencing court that a five-level increase is applicable to the defendant's offense level under Sentencing Guidelines Manual § 4B1.5(b)(1) because the defendant engaged in a pattern of activity involving prohibited sexual conduct.

## Extreme Conduct Departure

25.     The defendant understands that the government will seek a a four-level increase to the offense level pursuant to Sentencing Guidelines Manual § 5K2.8, because the defendant's conduct was unusually heinous, cruel and degrading to the victims.     The defendant will not join in this recommendation.

## Sentencing Recommendations

26.     Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.  However, the parties agree not to call expert witnesses at the time of sentencing, but instead to rely only on the April 23, 2005 report completed by Dr. Fred Berlin, the February 10, 2005 report completed by Dr. Jason Dana, and the pending assessment being conducted by Dr. John Pankiewicz.

27.     The government agrees to recommend a sentence of 50 years imprisonment, the statutory maximum for these offenses, and nine years of supervised release.  The

14

defendant agrees to recommend a sentence of no less than 35 years imprisonment and agrees to join in the government's recommendation of nine years of supervised release.

28. The defendant acknowledges, understands and agrees that if the court imposes a sentence of 50 years, and if the defendant provides a truthful debriefing about matters concerning other child victims, then the Dodge County District Attorney has agreed to dismiss the current case against him in Dodge County and not prosecute him for these charges or any other charges arising out of the child pornography/sexual assault matter involving victims known to authorities at this time. A letter memorializing this agreement is attached hereto and incorporated by reference.

29. The defendant further acknowledges, understands and agrees that if the Court imposes a sentence any less than 50 years, or if the defendant does not provide a truthful debriefing as set forth in the previous paragraph, then the defendant will be subject to prosecution in Dodge County for the offenses with which he is currently charged as well as any other offenses that Dodge County may charge in the future, and that he may face penalties of up to 380 years or more in state prison.

30. The defendant acknowledges, understands and agrees that the contingencies set forth in the previous two paragraphs have been fully explained to him by his counsel, and that he has knowingly and voluntarily authorized his counsel to advocate for a sentence of

15

35 years imprisonment despite the possibility of such further state prosecution and penalties.

## Court's Determinations at Sentencing

31.    The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

32.    The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

33.    The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction or upon further order of court. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

16

## Fine

34.     The parties agree that the government will recommend to the sentencing court that a fine be imposed against the defendant, based upon his ability to pay.

## Special Assessment

35.     The defendant agrees to pay the special assessment in the amount of $300 prior to or at the time of sentencing, or upon further order of the court.

## Restitution

36.     The defendant agrees to pay restitution, if ordered to do so by the court, at the time of sentencing or upon further order of court.

## Forfeiture

37.     The defendant agrees that all properties listed in the indictment constitute the proceeds of the offenses to which he is pleading guilty, or were used to facilitate such offenses.  The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture.  The defendant agrees that he has an interest in each of the listed properties.  The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S COOPERATION

38.     The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, including a proffer interview with law enforcement, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so.  The

17

parties acknowledge, understand and agree that the government will not recommend a downward departure in this case. If the defendant refuses to cooperate, the government reserves the right to proceed on the remaining charges, or to re-institute charges dismissed as a result of this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

39. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he

18

would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.     At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

40.     The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

41.     The defendant acknowledges and understands that he will be adjudicated guilty of each offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

42.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement

19

and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

43. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

## GENERAL MATTERS

44. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

45. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

46. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

47. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on

20

the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

48.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

49.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and

21

agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

22

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5-12-05

_____
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5-12-05

_____
TOM PHILLIP
DEAN STRANG
Attorneys for Defendant

For the United States of America:

Date:_____

_____
STEVEN M. BISKUPIC
United States Attorney

Date:_____

_____
WILLIAM J. ROACH
BRIAN E. PAWLAK
Assistant United States Attorneys

23

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date:_____                   _____
                                        Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date:_____                   _____
                                        TOM PHILLIP
                                        DEAN STRANG
                                        Attorneys for Defendant

For the United States of America:

Date: 5-13-05                           _____
                                        STEVEN M. BISKUPIC
                                        United States Attorney

Date:_____                   _____
                                        WILLIAM J. ROACH
                                        BRIAN E. PAWLAK
                                        Assistant United States Attorneys

23

# OFFICE OF THE DISTRICT ATTORNEY

Steven G. Bauer, District Attorney

Administration Building • 2nd Floor • 127 East Oak Street • Juneau, Wisconsin 53039-1329
(920) 386-3610 • Fax: (920) 386-3623 • Website: www.co.dodge.wi.us/da



**Assistant District Attorneys**
Gilbert G. Thompson
William Bedker
Mary Brejcha
**Victim/Witness**
**Coordinators**
John Hartman
Peggy Goodman
**Investigator**
Brian Drumm
**Office Manager**
Shelby J. Miller
**Secretaries**
Paula Justman
Dawn Bjork
Patti Kittleson
Beth Justmann
Tammy Morgan
**Receptionist**
Kathy Bosak

May 12, 2005

Willliam A. Roach
Assistant United States Attorney
517 E. Wisconsin Ave
Milwaukee, WI 53202-4509

RE:     State v. William Martin
        Dodge Co. Case 2005 CF 6

Dear Attorney Roach:

Pursuant to our conversations, if William Martin receives a 50 year or greater prison term on federal charges, and if he provides a truthful debrief about matters concerning other child victims, then I will dismiss the current case against him in Dodge County and not prosecute him for these charges, and any other charges arising out of the child pornography/sexual assault matter involving victims known to authorities at this time.

If you have any questions, feel free to contact me.

Very truly yours,

Steven G. Bauer
District Attorney
Dodge County

mc:SGB