OV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
GREEN BAY DIV.
'06 AUG 14 A10:16
FILED
SOFRON B. NEDILSKY, CLERK
MAIL-REC'D

---

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO. 04 CR 40

WILLIAM N. MARTIN, JR.,

Defendant.

ORIGINAL

---

TRANSCRIPT OF PROCEEDINGS

AUGUST 4, 2005
WAUPACA, WISCONSIN

HON. WILLIAM C. GRIESBACH,
U.S. DISTRICT JUDGE,
PRESIDING

RICHARD KIENBAUM
OFFICIAL REPORTER



276

APPEARANCES

MR. WILLIAM J. ROACH, Assistant U.S. Attorney, United States Department of Justice, 205 Doty Street, Ste. 301, Green Bay, Wisconsin 54301, appeared on behalf of the Plaintiff.

MR. THOMAS E. PHILLIP, Assistant Public Defender, 801 E. Walnut Street, Green Bay, Wisconsin 54301, appeared on behalf of the Defendant.

MR. WILLIAM N. MARTIN, JR., Defendant, appeared personally.

- - - -

I N D E X


| WITNESS | PAGE |
|---|---|
| KAREN SHEPHERD | |
| (Read Statement) | 9 |

| EXHIBITS | MARKED |
|---|---|
| (None) | |

DEPUTY CLERK: United States District Court for the Eastern District of Wisconsin is now in session. The Hon. William C. Griesbach presiding.

THE COURT: Please be seated.

DEPUTY CLERK: The Clerk calls case No. 04 CR 40, United States versus William N. Martin, for sentencing.

May I have the appearances, please.

MR. ROACH: Good afternoon, William Roach on behalf of the Government.

MR. PHILLIP: Good afternoon, Tom Phillip appears along with Mr. Martin, he's here in person and in custody.

MR. FARRA: And also present is probation agent, Mitch Farra.

THE COURT: Good afternoon all.

This matter is before us today for sentencing. Mr. Martin stands convicted on his pleas of guilty of three separate counts. There are two counts of enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that's in violation of Title 18, U.S. Code Section 2251(a) and 2, and it carries a maximum penalty of twenty years, each counts carries a maximum penalty of twenty years and a maximum fine of $250,000.00.

He's also charged and has been convicted of possession of child pornography contrary to Title 18 U.S. Code Section 2252(a)(4)(B), and that carries a maximum penalty of ten years and maximum fine of $250,000.00.

The presentence report is on file and counsel have filed, I believe Mr. Phillip on behalf of Mr. Martin did file some objections, none of them relate to the application of the guidelines or ultimate guideline. I guess they may, one has to do with --

MR. PHILLIP: One does, but eventually it's a moot objection. Even if it were granted, it's a two point application of the guideline for restraint of a victim; and even if my objection were granted, that would not change the guideline range whatsoever. We're already above the top end of the guideline range. So even without argument, if you said, sure, I'll grant that objection, the presentence report would not change.

THE COURT: And there weren't any other objections, were there?

MR. PHILLIP: There were some clarifications made to the agreement and a few corrections. One other objection or note that I had made regarded a potential upward departure, but given that the parties are making a joint recommendation, I'm not certain that the Government is going to request an upward departure; and even if they

did request it, there's no place to go up to.

THE COURT: Mr. Roach.

MR. ROACH: On those points, I believe, first with respect to the two point enhancement for restraints, I believe the presentence report is correct as written, the particular guideline that is addressed as 3A1.1(B)3 I think is clearly applicable, so even though it's somewhat academic and we agree that the presentence report on the two point enhancement is correct.

Reference the second point, plea agreement indicates the Government would be moving for an upward departure pursuant to the heinous offense guideline, or extreme conduct guideline I should say, 5K2.8 paragraph 25 of the plea agreement sets forth the specific ability of the Government to do that.

I think such an upward departure may have been much more relevant had we not been stipulating sentencing posture. I think clearly the facts support the application of the extreme conduct for a number of reasons. Court is familiar with the case, the number of victims, the multiplicity of acts committed by this defendant, the bringing in of others to sexually assault children, the list, Judge, really goes on and on. So the guideline applies, but I recognize as well that we are at the top end of the guideline, so we're at life

imprisonment with fifty year stipulation, I think it becomes less important for a detailed analysis or argument on that point.

THE COURT: It may be academic, but I'll still make the finding; but let me ask a question first concerning the issue of restraint. Am I correct that there's no dispute that the depiction do show children restrained, the issue is whether or not if restraint was intended to prevent them from getting away.

MR. PHILLIP: I think you correctly framed the issue.

THE COURT: But the restraints are there, the question is, what was the purpose for them.

MR. PHILLIP: Yes.

THE COURT: I'm -- do you have anything else.

MR. ROACH: On that point, Count No. 13 really is the count that sets forth the images that are named by the defendant on the images and looking at 3A1.1 which then references 3, I'm sorry, which then references the definition of 1. -- 1B, 1.1 which defines physically restrained as the personal restraint of the victim such as being tied, bound or locked up, I think clearly applies, Judge, these images are of at least one of the children, child, with his hand and feet bound by ropes, unable to escape on his own from what I can tell.

THE COURT: Are you able to stipulate to the facts set forth in the presentence report.

MR. PHILLIP: Yes.

THE COURT: Mr. Roach, you're in agreement with those facts.

MR. ROACH: I am.

THE COURT: I will adopt the factual statements set forth in the presentence report as my findings of fact in the matter. I'll make a finding that the guideline two level enhancement of the Count 13 based upon the restraint of the victim, does apply, and so two level enhancement would be granted. It is academic. The offense level without that would be a 43, and a 43 is a high level here.

The guidelines, or the presentence report does set forth the calculation of the offense level, the total adjusted offense level is 43, and that's after, frankly, reduction, because it's at the high level, multiple counts adjustment are applied as well as several victim related enhancements, and the offense enhancement; but in any event the total offense level comes out to 43. The defendant's criminal history score is a 2 and as counsel noted, the guideline -- the guidelines prescribe a life term for this, a person with this criminal history score and this offense level.

Are you in agreement with the application of the facts, the guidelines to the facts, Mr. Phillip.

MR. PHILLIP: Yes.

THE COURT: Mr. Roach.

MR. ROACH: Yes.

THE COURT: I'm going to adopt the application of the guidelines to the facts in the case as set forth in the presentence report.

Does either party intend to offer any evidence at today's hearing, any statements, Mr. Phillip.

MR. PHILLIP: No, thank you.

THE COURT: Mr. Roach.

MR. ROACH: No. There are -- there's at least one victim in court here today. My understanding is that he does not want to provide a statement; and I believe his mother, when I spoke with her, indicated she did not want to do that. I explained as well that the parties are stipulating to fifty years imprisonment, so at least when I last spoke, she wasn't interested in making a statement.

MS. SHEPHERD: I have a statement from the family that they wanted me to read.

MR. ROACH: Karen Shepherd, from the F.B.I. is here, and she would like to read a statement.

THE COURT: Ms. Shepherd, would you come forward.

Do you see any need to place her under oath.

MR. PHILLIP: No, it sounds like she's going to be reading someone else's statement, so --

THE COURT: Ms. Shepherd, if you would just come forward and read it loud enough so that the Court Reporter and everyone else can hear you.

MS. SHEPHERD: Okay.

THE COURT: Would you first state your full name and spell your last name.

MS. SHEPHERD: Okay. My name is Karen Shepherd, S-h-e-p-h-e-r-d. I'm a victim specialist with the F.B.I. in Milwaukee office.

This was faxed to me this morning by the Clark family.

I apologize for not being here today. My work in California has kept me there longer than I expected, but I wanted to voice -- my voice to be heard all the way across this country.

I can't begin to tell you how the situation affected myself and my family. There are so many affected.

Truth, responsibility and justice are words thrown around every home and school around this country. What do they really mean. How do you tell a child who has been manipulated, terrorized and victimized that

everything will be okay. How do you tell that same child, tell the truth and justice will prevail, and the person responsible will pay for their actions, when the person is still manipulating and victimizing from jail, using the court system.

As the law has it -- it said Mr. Martin has more rights than my children and I find this really troubling. I could not believe what I was hearing when the District Attorney called me, Martin had wanted to take the plea agreement that had stood from day one, day two, there should have been no deal on the table anymore. For myself hearing fifty years was like a slap in the face to everything I have taught to my children since they were young. This -- with truth justice would prevail, I don't think any of us think fifty years is justice, regardless of the demise of these monsters in this case.

With a fifty year sentence the thought in Mr. Martin's head must be, some day I will still get out. The authorities should not have allowed that thought to have entered his head.

I know with time, counseling and the love of their families all of the people affected by this will move on with their lives. Mr. Martin has not won. I pray that everyone investigating, prosecuting or judging this case never has to hear from a child close to him or her

that someone has sexually assaulted him or her. It leaves a knot in your stomach and a hole in your heart that can never be fixed. Anyone who says they understand how you feel and has never had a child close to them sexually assaulted can't even imagine until it happens to you. You have no idea.

I don't know if a thousand years would make me feel like justice has been served, but for the crimes that Mr. Martin has committed, fifty years seems like a slap on the wrist.

Mr. Martin just hasn't -- I'm sorry, Mr. Martin hasn't just taken the hope and dreams of twelve children and how many more that have not come forward. He has taken the hopes and dreams of our future, and for that no amount of time could be justice enough.

All I can hope is Mr. Martin gets his justice in prison.

I thank the Court for the time at least to be heard, and I hope the Court decides fifty years isn't enough and sentences Mr. Martin to a harsher, tougher sentence and sends a message to all offenders like him that they cannot get away with this type of behavior.

THE COURT: Thank you, Ms. Shepherd.

Anyone else.

MR. ROACH: I see that some other of the

victims have come into court since the case started, they're in the background.

THE COURT: All right. If there's no further evidence, your statement now, counsel, since it appears this is a joint recommendation. Mr. Roach.

MR. ROACH: Yes, thanks, Judge. It's hard to summarize I guess in a few words this case. Its -- its been a case that certainly has been thoroughly investigated the last year and a half, and it's a case factually that you know as well from hearing all the pretrial matters that spawned decades. We have decades of facts pertinent to Mr. Martin and some of the other participants and even some of the child victims involved in this case.

And I guess a protracted explanation of the facts and how we got here and all of the children that have remotely become involved in this case or that Mr. Martin has sexually assaulted over the -- over his life span isn't fully necessary right now, because we're at a point where the parties are in agreement to fifty years, and so that's what, I guess I can short circuit some of this and not belabor the record that I know is already filled with statements from victims and names of children that were part of images and subject to horrific sexual assaults. We're in agreement that fifty years is

appropriate and we can't leave that apart. This would of -- this sentencing would of gone on for the better part of an afternoon arguing to you with great fervor the number of victims that were involved and horrific actions upon them and why anything less than a fifty year sentence is absolutely inappropriate, why reports from doctors, such as Dr. Berlin, detailing without excuses as to why the defendant did what he did, should be disregarded.

We're, again, in agreement that fifty years is appropriate, and that's what we're going to urge upon you; but, of course, it's incumbent upon me to make, at least I believe it's important to make a few more observations.

First and foremost I think law enforcement should be commended for what they did in this case in identifying victims, identifying and arresting perpetrators and stopping what had been horrific abuse on a number of victims. I thought they did an excellent job in this case in this jurisdiction, and, Judge, you know, this is a case that's spawned across State lines and gone into several other jurisdictions. But really this is not a case about law enforcement, it's not. This is a case about victims and it's a case about perpetrators.

First off, with respect to the child victims here, the Court is aware of their names, I don't think we have to state their names for the record. I'll refer to

them all generically as victims, really at the risk of belittlizing -- belittling what happened to them. Each one of these victims that Mr. Martin has assaulted have their own story, and hopefully they're all at points where they'll he able to move on from this.

I'm relieved in that we were as best as possible able to identify and get services and certainly stop the abuse that Mr. Martin and others were perpetrating on them. We were able to do that. We were able to offer something to them to help them through this. God speed in their recovery. Future only will tell really what will happen to them. I hope that they're all dealing with this as best as possible.

It's tough for me simply to interview some of these children and talk to them about skateboarding or math or their favorite subject and then see them, see their head -- see their head bow down when you start talking about what Mr. Martin did. It's tough for me, I can't imagine how it would be for them.

The perpetrators, the predators, Mr. Martin is clearly the worst of the worst in my assessment as I look at this case. What he did and for the period of time that he did, it's -- it's unspeakable, the acts are unspeakable. When you look at the videos and some of the image and movie files memorializing what he did, it's --

it's graphic, it's disturbing, I don't know how else to -- how else to explain it.

Mr. Martin needs to go to prison for every day of the fifty years that we're jointly asking you to send him.

A word or two though about the fifty years. I know Mr. Clark mentioned the fifty years and expressed a desire for a greater amount of time. He's right when he says fifty years has been an offer extended for -- for months and months prior to the time the trial was set in this case. This wasn't a figure arrived at just a week before trial when all the pressures of trial bearing done on everyone, this was a number that had been offered months and months ago, prior to trial, and it's a number that -- that the Government offered because effectively the Government believes it's a life sentence, that's what it has been called by others, its been called by the defense effectively life sentence, has been called that by numerous people, and I believe it is.

The issue then that came near as word came to the Government that Mr. Martin was going to change his current path, he was at a number much less than fifty.

The scenario of events after -- after Mr. Martin advised he was interested in accepting fifty years was this: I called each one of the guardians, parents for

the victims, and discussed that with them, every single one of them; and there were some, like Mr. Clark, who advised that fifty years wasn't enough and that a life sentence was -- wasn't even going to be enough for Mr. Martin; and I can appreciate that as being the father of someone who was so close to this and obviously sexually abused; and I have to tell the Court as well that the Clark family was just one of seven or eight that factored into the equation; and undoubtedly the majority of mothers and guardians that I contacted, when I explained the pros and cons of that fifty years, they were in support of that disposition, resolving that case with fifty years, not as a plea bargain, a last minute deal to avoid trial, but because it was in the best interest of the case and the best interest of the kids, and I firmly believe that -- excuse me -- I firmly believe that today.

There were -- there were children that were subpoenaed that were going to be called on to testify that would of provided important significant testimony in this case, not being called for the mere notion of parading a child into court, as Mr. Martin contends, but would of offered significant and important facts that would of helped the Government in its proof in this case, that would of had extreme difficulty testifying. I know it, I saw it during the trial prep interviews. I don't know

what would of happened once a child like that gets up on the witness stand, but I had mothers and parents telling me that they just didn't want to see that happen, and that's through no fault of the particular child victim, that -- that statement as to the -- as to the control the defendant had over them, and that's -- that's a terrible sad thing.

So that's -- that's how we got to where we are today; and I firmly believe that fifty years is a type of a real life sentence for Mr. Martin, gets him off the streets and puts him where he needs to be, in prison. And equally important it saves some child victims from having to testify and going through the trauma of that, and it gives importantly some closure to this case, for the victims as well, some finality to it.

We all know in the criminal justice system that strange things happen at trial. I can't say that I had real grave concerns that Mr. Martin would be found not guilty by reason of insanity. I believe Dr. Berlin's opinion in this case would of been refuted, but you never know until the case goes to a jury. There were a lot of factors such as that, that weighed into the equation as to trying this case anyway in the face of a fifty year effective life sentence, and it was my opinion, that of my supervisors, that of law enforcement in the case, and

certainly that of the majority of victims, guardians and parents that that was not the way to go. The way to go was to go the route that you are seeing here today, and I stand by that.

One final comment. At the time of plea you heard from Mr. Martin, and Mr. Martin tells you essentially, and I'm paraphrasing, that he is the one that saved this case and saved the child victims from testifying in that it was really his interest all along to make sure the kids were not put through this, paraphrasing, but that essentially is what I recall him saying.

I think that's a disingenuous statement, Judge. I don't believe Mr. Martin when he says that he resolved this case to save the children from testifying. Had that truly been his motivation, had his motivation truly been the best interest of the children involved in this case, he would of done what Mr. Kline had done, he would of pled to this case over a year ago, after it had been indicted. He wouldn't of let this case prolong for a year. He would not have had the case set for trial on numerous occasions, knowing full well the Government would be calling the child victims, would be interviewing and preparing the child victims for trial. That speaks louder to me than Mr. Martin's statement that this is really

about him saving the children.

I think what this is about, is Mr. Martin seeing if he could get a better deal than fifty years, and when he saw that it wasn't coming, well, that's the way he's going to go. Certainly not the most important part of this case, but I think it again speaks to the manipulation of Mr. Martin, at least of the children and -- and to some degree the court system here.

All of these circumstances as I see the case lead to one unmistakable conclusion, Mr. Martin needs to go to prison for every one of those fifty years and needs to be taken off the street because of the danger he possess to this greater public and in particular children.

Thank you.

THE COURT: Thank you. Mr. Phillip.

MR. PHILLIP: Thank you. This case has been going on for eighteen, twenty months, in that ball park, its been a long and it's been difficult, and the ending today is, it's not ending with a bang, it's ending with a joint recommendation. The case is not going out in any sort of exciting way, it's coming to a conclusion where both sides are saying the same number, both sides recommending fifty years, that's the maximum that's available. The presentence report essentially comes out there, too, when the guidelines are higher than the

statutory maximum, the guidelines then recommend the statutory maximum. So a joint recommendation for the maximum sentence I guess puts a practical limit on what both parties will say.

I -- I agree with Mr. Roach that we would have been here for most of the day if this was going to be a contested hearing. His comments certainly would have been much longer and so would have been mine. But, we have a joint recommendation, it's the biggest number that the Court can impose, so neither of us are, I suppose, arguing against each other or arguing for a particular thing, we're both saying the same thing should happen, so my comments will be shorter than most days.

In this case the Court has more information probably than almost any I'd say that's been in front of it that I've been associated with in the past two or two and a half years.

There's a presentence report which is as thorough and well done as always. There are three separate psychological reports by doctors, there's been motion practice in the case, and so the case facts and the history and characteristics of Mr. Martin are in the record in great detail, and much like Mr. Roach, I'm not going to repeat all of those.

The only real information I'll point out from

that wealth of factual data is that Mr. Martin has probably spent his whole life and will continue spending the rest of his life behind the eightball. That's not an excuse, that's a fact. He had a chaotic life as a child. He had bad or nonexisting parenting, he was a victim of assault himself, used and abused drugs and alcohol, was in foster care himself. All those things are not an excuse, they're not an explanation, they're just facts that are in the presentence report.

Mr. Martin, like everybody else, has free will, he is in control of his own destiny, and he made the choices that he did make, but his choices in some respect were circumscribed by the environment that he grew up in; and on that idea of choices and free will, I'll take issue just a little bit with Mr. Roach's comment about Mr. Martin manipulating the system. I don't see it that way. Maybe that's the difference in our two respective positions. In terms of manipulating the system, if I'm a part of that, well, then so be it. This has been a very difficult case. They have been both, not so many I would say factual issues, but legal issues, strong differences of opinion, I would say, between the prosecution and the defense; and for my part I guess Mr. Roach and I can agree to disagree. If Mr. Martin is manipulating the system, then I am, and that's what I do. So I disagree with that,

I don't think that he's done anything different than other people may have done in his situation. I certainly don't think I have done anything different in terms of his defense than I would have done with another person in his situation. So I would disagree politely with that characterization of system gaming.

In terms of since, events since the presentence report was written, the Court is, I'm certain, aware that a portion of the plea agreement states that Mr. Martin would provide a debriefing to law enforcement. He's since done that twice, but one as recently as yesterday, that's not going to result in any motion by the Government for reduction of sentence, there will be no 5K1 motion, there will be no rule 35 motion. The reason why I'm bringing it up is that I believe Mr. Martin has fulfilled the terms of his plea agreement, thus if the Government and the prosecuting attorney from Dodge County sees things the same way, his Dodge County case can be dismissed. That's not a decision this Court can make or I can make, I'm just stating that I believe he's complied with the terms of his plea agreement.

In summary then I would ask the Court as is the Government and as is the presentence report to impose the fifty year sentence.

There's also a joint recommendation for the

maximum term of supervised release, should that become necessary, that would be nine years.

I would ask that the Court recommend placement at FCI Butner or FCI Devens, Butner is in North Carolina, Devens is in Massachusetts. To my knowledge those two facilities are either developing some sort of center for treatment for placement of similar offenders.

I would ask the Court not impose any fine, there's no ability to pay.

The presentence report indicates an amount of $2,078.01 in restitution. We don't object to that being ordered.

And beyond that I don't have any further comments.

Mr. Martin may or may not address the Court.

THE COURT: Thank you, Mr. Phillip.

Mr. Martin, is there anything you want to say before I impose sentence.

MR. MARTIN: Truly not many words I can say. I take back to make up anything I've done and allowed to happen. I am sorry for anyone I ever hurt. I never intended to. It's hard to believe that, but it's from day one being arrested I did realize I was guilty of what I was being charged with. I had no intention of going to trial, never had intention of going to trial, as my lawyer

knew that, but due to the way it was supposed to be done, but they were -- they were offering me -- they were offering me no help whatsoever to, not to get out of prison, do life in prison, but to get help so there's people out there that like myself, that while they're out there's no help available and there's no -- there's no place I could of went to to try and work these issues out before it ever got to the point where it was at. This isn't something that someone decides all of a sudden they're going to go out and be attracted to a child, that they're going to go out and -- and molest a child, it's not something some of us ever choose, you know, to be that way. We're born that way, it's something that happens, it's something that there's no help available. I tried to get help early on as a child, I tried to get help as an adult, and there's none available. None of this would of happened if when -- when I sought the psychologist that I sought at the time, if they would of done something, none of this would of happened, I mean, I wouldn't, regardless of about me being the victim, I would never be.

As far as Mr. Roach saying that just a big game I was playing, that the only reason why I pled guilty to this or didn't want to go to trial, is just the simple fact I don't hide anyone, they shouldn't have to go, there's no need for them ever to go to point of trial.

There's enough pictures, there's enough evidence, I never disputed any of it.

As I told you during -- during the time where I pled guilty that we were -- I wanted to have a factual trial, not a -- I wanted to have trial on insanity defense, not that I would ever get out if I was found insane, but then it would be on record and something hopefully would be done at that point to help further people out; and then by going through the trial that kids shouldn't be involved. I would just use their testimony, you know, their statements, and that would be enough, they would never have to come and speak, they would never -- they would be done with it and get on with their lives as best as they can. All the victims, most of the victims, they know, they know exactly what has happened, when it happened. I know it's wrong, they know it was -- they know it's my fault, it's not their's, they know that. And I just hope and pray that they'll be able to get through this and they'll go on; and I hope that when I go to prison, wherever I go, that I can make a difference in, and I will continue for the rest of my life to try to help others out and -- and where there's some law, where there's some help available to people out there, because not everybody, you know, is that bad of a person, and not everything that was said that I did, did I do. It's

irrelevant though. There were some really awful things that were done, for that I'm very sorry. Nothing I can do to take that away.

I do want fifty years. I would of -- I would of agreed to a hundred fifty years to keep from going to trial, you know, I never intended them to go to trial.

But -- so I am hoping that I can go to Butner or the other facility because there is a treatment center there, where there is people that deal in this, and hopefully working somehow to save other people from having, you know, it's other victims from having to deal with this.

That's, you know, pretty much all I got to say, other than I'm sorry, not that it matters at this point.

THE COURT: Parties have -- thank you, Mr. Martin.

The parties have jointly recommended a total sentence of fifty years, that's the maximum I can give based upon the convictions that are before me, and there's no question that the defendant deserves that and more. I don't think anybody in this room disagrees.

I just heard Mr. Martin say he doesn't even disagree, although as much as his position was different early on, but that he needs to spend the rest of his life

in prison.

Even life in prison doesn't seem like it's sufficient from the magnitude of harm and gross horrible things that Mr. Martin did to these children and for the period of time in which he did it.

Certainly this Court knows much about the case, there are cases I learned more about, those are the cases that I actually tried.

Mr. Martin is the last four individuals that I sentence in this offense, or for conduct relating to this scheme, and he is the mastermind.

The -- the horror of the offense is reflected in the difficulty I think the attorneys have had to deal with him, not only Mr. Roach, Mr. Phillip probably; and I understand the desire to spare children the need to testify. There's always uncertainties of trial, there are always possibility of appeal, trial error, or other issues that can come up; and by resolving this case in the manner in which they have, the Government and counsel have put an end to those types of issues, thus puts finality to the case, and gives Mr. Martin a sentence of fifty years, which is in all likelihood the rest of his life. If not his entire life, by the time he's released, he will in be in his 80s and be supervised for at least for an additional nine years. Effectively I think the

Government's goal ensuring that a prison sentence that is proportional to the seriousness of the offense and protect the public to make sure Mr. Martin does not have the opportunity to do this to anyone is achieved.

Taking -- accepting a plea to less, and all defendants committed so many terrible crimes, is always difficult, but the practical reality here and considering the victims, which the Government clearly made a decision and reached an agreement that in its view was the most reasonable one, and essentially second guess, I accept the plea, and I'm in no position to second guess that now.

I understand the words of the Clarks and other victims who feel that more should be done, a longer sentence; but I think it's probably also true that no amount of time in prison, no amount of punishment that a civilized society could inflict on Mr. Martin would -- would be enough given the seriousness of these offenses.

I also am sympathetic and understanding of complaints of victims sometimes who feel that Mr. Martin manipulated the court system, and that defendants, those who commit crimes, have all the rights, and those who are victimized by, have no rights; and there is some, it's understandable why they reached that conclusion.

This system is set up to ensure that a person accused of a crime and who will, if convicted, lose his

liberties, sometimes even their life, doesn't make mistakes, or any mistakes it does make are to the benefit of accused. The system necessarily then gives rights to the person who is going to be locked up, it does not give rights, until relatively recent, did not give rights to those who are the accusers, those who are the witnesses, and to many that seems unfair until you step back and look at the purpose of the system. We now have a much greater recognition of the impact criminal prosecution has on victims, also, and there are victim rights that are now recognized and they are respected in the sense the Government consults with victims about the cases, keeps them advised of the case, tries to minimize as much as possibly can be minimized, the difficulty of going forward in cases. Yet people look at that impression that the defendant is manipulating the system. And sometimes they are, and Mr. Martin very well might be. I don't put Mr. Phillip in that category by any means. Mr. Phillip is doing his job as an attorney. Sometimes this Court feels manipulated. Sometimes this Court has trouble, and if it were up to me, I would simply reject defense out of habit, but that's not my proper role, and what happens when the Court rejects defense because it believes it has no merit simply at the outset, often the case gets reversed and we end up having to do it twice, or worse yet substantial

right of accused can be, can result in miscarriage of justice, now that certainly wasn't serious consideration here; but yet the defendant exercised the rights he has under our Constitution and our criminal justice system delayed this case more than I had ever thought was possible, and the sheer magnitude of discovery, the amount of material, and apparently computer generated crimes are known for this, it simply required a great deal more time than this Court expected, but I can't very well hold that against parties in this case. Those are all side issues.

Fundamental issues, the one that everyone agrees on, is that Mr. Martin must be sentenced to as long a term as possible under the agreement parties have submitted, and there's a joint recommendation to that effect.

Mr. Martin, quite frankly, is best classified as a sexual predator, especially in his pursuit of minor boys.

He admitted extremely difficult childhood, chaotic, involved him in being the victim of sexual abuse as well, probably more than once, although those assaults aren't confirmed, his childhood clearly was one that could send him back. He did not have many advantages as I understand. That, however, is no excuse, even to say that his choices were circumscribed, is probably too much of an

overstatement.

Mr. Martin despite the difficult childhood, did manage to get a skill, managed to hold employment where he was capable of earning a decent living. I don't see any reason to believe that Mr. Martin wasn't able to control this type of behavior. He simply chose not to. He controlled it to the extent of making sure that he wasn't caught. He was able to continue for some period of time. It was only investigations of others who he communicated with that led to discovery. Mr. Martin himself was very careful in the manner in which he did things and the way in which he operated. That tells me that he had control.

And I -- I refuse to accept his attempt to avoid responsibility for his crime by saying, I'm a sick man, I need help, I need treatment. That may all be true, you may have urges that no one else in this courtroom has, but that doesn't mean that you are incapable of controlling your behavior. Your refusal to control your behavior and willingness to subject children and innocent, innocent people in our community to the horrors and miserable life that you had subjected them to, have to be punished, have to be punished very severely. The parties have reached an agreement reflecting that.

The most important thing in addition to

considering the seriousness of the offense, most important consideration, of course, is that the Court impose a sentence to make sure this defendant is no longer a threat to any children, not only also present victims, but any other children in the future.

I know Dr. Dana's report recounted in the presentence report indicates that the defendant's deviant sexual desire specifically for males ages eight to thirteen years of age will remain unchanged, even with therapeutic intervention, that's probably -- there may be some dispute over that, certainly this record and this behavior is reflected today, as well as the rationalization Mr. Martin has given for his conduct over the period of this case reflected in his conversations, even in letters to others that have come before the Court in context of different procedures, proceedings, or in his statements to the psychologist who evaluated him, the idea that there is nothing morally wrong in his behavior, that it's society's views that have damaged these children, is one that is unfortunately a view that has been expressed by people who have not been -- not involved themselves in the same crime and people that have not been, who have been unfortunately taken seriously, and that view that Mr. Martin has passed on to the Court as his rationalization apparently abandoning the purpose of sentencing, his

sentence, but that view is a very destructive one and very damaging and very dangerous and is at bottom a justification for a scheme of the behavior that has led to a lot of damage in the lives of many children and beyond.

As I said, I don't accept it, and it doesn't much matter whether I would or not, it would not change, I do not accept Mr. Martin's contention that he's responding to urges and illnesses that are beyond his control. I believe Mr. Martin is responsible for his conduct. Punishment I impose here today is intended to hold him responsible for his conduct, it's not intended as commitment of person who has no control of his behavior.

Fifty years is the maximum I can impose. That is the sentence I will impose.

So on Count 2 I impose the statutory maximum of twenty years. I impose twenty years on Count 4, to be consecutive to Count 2. I impose ten years on Count 13, to be consecutive to Count 4. Total sentence then is twenty years, I mean, is fifty years, when sentences are run consecutively, as I indicated they will be.

I'm also going to impose a fine of $5,000.00. While the defendant does not have financial resources to pay that fine, I am advised by the author of presentence the defendant will have the ability to work in prison. He will have limited financial resources, but will have

limited expense as well, and will have a lot of time in which to pay such cost, so I will order payment of fine. To pay the restitution of $2,078.01, that will be paid jointly and severally with the co-defendants.

I will impose three years of supervised release. I will impose it on each count consecutively at this point, but I ask counsel to review, and I will myself review 18 USC Section 3624(E). I'm advised by the presentence author, by Mr. Farra, that I may not have the authority to impose consecutive periods of supervised release. If I do not have that authority, I will modify the judgment, but I want to review that first. But if I do have the authority to impose consecutive periods of supervised release, I will do so. The maximum period for each count is three years, and that's the term I impose and should run consecutive, unless I end up amending the sentence, amending the judgment of conviction, as I do not have the authority to do that.

Assuming that the defendant reaches a release date, complete the term of confinement that I imposed here today, and begins the supervised release, the conditions of the supervised release will be as follows: Within seventy-two hours of his release from custody of bureau of prison the defendant will report in person to the probation office in the district to which he is released;

the defendant may not possess any firearms or other dangerous weapons; the defendant may not illegally possess any controlled substance, any illegal possession or use of controlled substances will result in a revocation of his supervision term and he will be obligated to serve a further term in prison; the defendant is to have no contact with any of the victims of these offenses, that includes letters, communication devices, audio or visual devices, visits or any contact through a third party, without the prior approval, prior written consent of the supervising probation officer; the defendant is to submit his person, residence, office, or vehicle to a search conducted by a probation officer at reasonable times and in a reasonable manner to determine if he's in compliance with conditions of his supervision, the search may be conducted by a probation officer without prior notice or a search warrant, and refusal to submit to such a search is a violation of the conditions of his supervision. The defendant is to cooperate in the collection of DNA under the guidance and supervision of his probation officer; the defendant is to pay restitution at a rate of not less than $100.00 per month, also apply one hundred per cent of his Federal and State tax refunds toward payment of the restitution and fine; the defendant shall not change exemptions without prior notice to his probation officer;

the defendant may not open any new lines of credit, including leasing of any vehicle or other property or use existing credit resources without the prior approval of his probation officer; the defendant is, after his court ordered obligations, financial obligations is satisfied, that condition is no longer; the defendant is to provide access to all financial information requested by his probation officer, including but not limited to copies of the Federal and State income tax returns, all tax returns are to be filed in a timely manner. The defendant is also to submit monthly financial reports to his probation officer; the defendant is to have no contact with children under the age of eighteen and unless approved in advance in writing by his probation officer, and then only in the physical presence of responsible adult who has been advised of defendant's criminal history of inappropriate contact with minors, and shall report within eight hours to probation office any unauthorized contact the children; the defendant is to participate in a program of sex offenders, mental health offenders and seek treatment as approved by his probation office until such time as he is released by that program by his probation officer. This assessment and treatment may include polygraph to assist in planning case monitoring, any refusal to submit to an assessment or test as scheduled is a violation of

conditions of supervision. Defendant is also to pay the cost of that program under the guidance and supervision of his probation officer. The defendant is to waive all rights to confidentiality regarding sex offender mental health treatment and to provide release of information to probation officer and to authorize open communication between his probation officer and treatment provider. The defendant shall not possess any sexually explicit or nude individual material involving minors, persons who appear to be minors, any text material describing sex with minors, shall he knowingly be any place where such material is available or used, any electronic equipment, including a computer where such material can be obtained or viewed. The defendant shall consent to his probation officer conducting periodic unannounced examination of his computer equipment, which may include hardware, removable storage or media devices and copying of all data from the computer, this could include the removable of such equipment by the supervising probation officer when necessary for the purpose of conducting a more thorough examination. The defendant shall register with State and local authority as a victim sex offender. I will also order that the judgment incorporate the forfeiture of computer equipment and camera equipment seized from the defendant's home.

Is there anything else that I need to include by way of forfeiture?

MR. ROACH: Those listed --

THE COURT: All those items listed in the preliminary --

MR. ROACH: Right.

THE COURT: And judgment of the conviction shall reflect that the defendant is to pay special assessment of $300.00 as soon as able to do so as well.

I will recommend placement at either Butner or Devens. I recommend it with the understanding that those places may be able to provide some sort of treatment and certainly the study and treatment of the pedophilia disorders that are so often brought before the court in cases of this nature is worthwhile, even if the likelihood of defendant may never be released.

Other than appeal rights, did I omit anything.

MR. ROACH: No, your Honor.

MR. PHILLIP: No.

THE COURT: Mr. Martin, to the extent you have not already waived your appeal rights, plea agreement may reflect provision with regard to that, but to the extent you have not done so, you have the right to appeal your judgment of conviction. Your attorney has a duty to consult with you on possible grounds for appeal. If you

cannot afford the cost of appeal, the clerk will assist you in filing so you would not have to pay. Any appeal must be preceded by a notice of appeal. To file a notice of appeal within ten days of entry of judgment. If you fail to do that, you can lose your right to appeal.

Do you understand those things?

MR. MARTIN: I believe so, yes.

THE COURT: Anything further.

MR. PHILLIP: No, thank you.

THE COURT: This matter is concluded.

(Hearing concluded at 2:24 p.m.)

- - -

STATE OF WISCONSIN)
) ss.
WAUPACA COUNTY )

I, Richard Kienbaum, Court Reporter in the City and County of Waupaca, State of Wisconsin, do hereby certify that the foregoing is a full, complete and correct transcript of my stenographic notes taken in the foregoing hearing.

Dated this 10th day of August, 2006.

Richard Kienbaum,
Court Reporter,
Waupaca, WI